ED CHLOPEK AND KARL CHLOPEK, APPELLEES, V. KELLY J. SCHMALL, JAMES H. SCHMALL, AND JO ANN L. SCHMALL, APPELLANTS.

396 N.W.2d 103

Filed November 7, 1986.    No. 85-092.

Michael J. Javoronok of Holtorf, Kovarik, Nuttleman, Ellison, Mathis & Javoronok, P.C., for appellants.

James R. Hancock of Hancock & Denton, P.C., and Robert G. Pahlke of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

This is an action for damages by the plaintiffs, Ed and Karl Chlopek, resulting from a collision between a truck with a "pup" trailer, owned by the plaintiffs, and an automobile operated by defendant Kelly J. Schmall, which was owned by her parents, defendants James H. and Jo Ann L. Schmall.

The pleadings raised issues of defendant Kelly Schmall's negligence, the contributory negligence of plaintiffs' driver, and the nature and extent of plaintiffs' damages.

Both parties filed motions for summary judgment, plaintiffs seeking judgment on all issues and defendants seeking partial summary judgment on the issue of whether, as a matter of law, plaintiffs could recover as damages loss of use of the truck and pup trailer if the property was totally destroyed, that is, if the cost to repair the truck and trailer exceeded their market value before the accident.

In deciding the summary judgment motions, the district court determined that defendant Kelly Schmall was negligent and that her negligence is imputed to defendant James Schmall, her father and the head of the family. The trial court further found that the actual damages to the truck, trailer, and other personal items in the truck totaled $49,947.40. The court also determined that, as a matter of law, where a commercial truck is totally destroyed, plaintiffs may recover damages for loss of use of the truck until another truck can be obtained, and where a rental truck is not available, then the loss of use is measured by the loss of profits.

The balance of the summary judgment motions were overruled, and the case proceeded to trial to the court on the remaining issues of the contributory negligence of plaintiffs' driver and the amount of damages for loss of use of the truck and pup trailer.

Following trial, the district court found that plaintiffs' driver was not negligent and that plaintiffs suffered a loss of profit, until they could replace the truck, in the sum of $13,225.18, and entered judgment against all three defendants in the total sum of $63,172.58.

At the hearing on defendants' motion for new trial, plaintiffs were given leave, over objection, to amend the total amount of

the prayer of their petition, up to the amount of the judgment, a difference of $364.81. Defendants' motion for new trial was then overruled, and this appeal followed.

Defendants on appeal do not challenge the trial court's finding that defendant Kelly Schmall was negligent or the amounts of the damages determined. They do assign as error: (1) The trial court's finding that plaintiffs' driver was not contributorily negligent; (2) The allowance as a matter of law of damages for loss of use of a totally destroyed commercial vehicle; and (3) Abuse of discretion in allowing plaintiffs to amend their petition after trial and judgment.

We note at the outset that the district court's entry of partial summary judgment held that the negligence of Kelly J. Schmall was to be imputed only to her father, James H. Schmall, as head of the family, under the Nebraska family purpose doctrine. Although not assigned as error, Jo Ann L. Schmall should have been dismissed from the suit, since, as a result of that holding, no negligence could be imputed to her, and the amended petition contained no allegations that she was personally negligent. The judgment against her is reversed and the petition is ordered to be dismissed as to her.

We turn to defendants' contention that the trial court erred in finding that plaintiffs' driver was not contributorily negligent. Our review of this issue is governed by what we have often said:

> [T]he findings of a court in a law action in which a jury has been waived have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. In such a circumstance it is not within our province to resolve conflicts in or to weigh the evidence; if there is a conflict in the evidence, this court will review the judgment rendered and will presume that controverted facts were decided in favor of the successful party.

*Wheeler Constr. v. Town & Country Realty*, 217 Neb. 424, 427, 348 N.W.2d 890, 892 (1984); *Nerud v. Haybuster Mfg.*, 215 Neb. 604, 340 N.W.2d 369 (1983).

The accident took place at the intersection of U.S. Highway 26, an east-west highway, and a north-south county road in Morrill County, Nebraska. Highway 26 is protected by stop signs on the county road.

Steven Doornbos was driving plaintiffs' truck and the pup trailer loaded with approximately 94,000 to 100,000 pounds of sugar beets. He testified that he was proceeding west on Highway 26, and as he crested an incline he saw defendants' car stopped behind the stop sign on the county road on the north side of the intersection, facing south. He was about 1,000 feet from the intersection at that point. Defendant's car remained stopped until Doornbos was 500 to 700 feet from the intersection, then moved forward and stopped again. When he was 400 feet from the intersection and moving at about 50 m.p.h., the car proceeded into the intersection in front of him. He applied his brakes, but as the car continued to move across the westbound lane, he released his brakes and swerved to his left to avoid a collision, which was unsuccessful, the vehicles colliding just across the centerline of Highway 26 in the eastbound lane. After impact, the truck veered back toward the centerline, overturned on its side, slid down the highway, rotated twice, and caught fire.

Kelly Schmall, by deposition, testified that at the time of the accident she was 14 years of age and was driving her parents' automobile on a learner's permit. Riding in the car with her were her 16-year-old sister and 11-year-old brother. The three were going to school and were late getting started.

Kelly drove south on the county road to Highway 26 and stopped at the stop sign. She then moved forward to the edge of the highway and stopped again, intending to turn left and proceed east on Highway 26. She looked to her left, but a glare off a road sign to the east made it difficult to see anything. She pulled onto the highway, saw plaintiffs' truck about 100 feet away, stopped, and tried to put the gear in reverse. She remembers nothing else.

There is no significant conflict in the versions of the two drivers. Defendants argue that the truck was traveling at an excessive speed under the conditions existing. Those conditions were that traveling at 50 m.p.h., Doornbos estimated it would take him one-quarter to one-half mile to stop the loaded truck and pup trailer, that he was aware of a sign (the one whose glare blinded Kelly Schmall) which said "slow moving trucks" as he approached the intersection, and was aware of defendants' car

stopped at the stop sign when he was 1,000 feet from the intersection.

In addition, defendants rely on evidence that the load on the truck and trailer violated the maximum allowed by statute and that plaintiffs violated Neb. Rev. Stat. § 39-6,133 (Reissue 1984) in that the truck and trailer were not equipped with a braking system adequate to bring the vehicle traveling at 20 m.p.h. to a stop in a distance of not more than 65 feet. Violation of such statutes, however, does not constitute negligence in and of itself, but is merely evidence of negligence. *Hartman v. Brady*, 201 Neb. 558, 270 N.W.2d 909 (1978). The trial court must have determined that any such negligence was not a proximate cause of the collision. We agree.

The crucial question to be decided is whether plaintiffs' operator was negligent in driving the truck at 50 m.p.h. on Highway 26 at a point 400 feet from an intersection and knowing that (1) an automobile was stopped at the stop sign protecting his lane of travel and (2) he could not stop the truck at that speed in less than one-quarter mile. In other words, was his speed excessive under those conditions and circumstances?

In arguing that it was excessive, defendants would invoke the "range of vision" rule. It is a general rule that it is negligence as a matter of law for a motorist to drive a motor vehicle on a public highway, at any time, at a speed or in such manner that it cannot be stopped or its course changed in time to avoid a collision with an object or obstruction discernible within his range of vision in the direction he was traveling. See *Ritchie v. Davidson*, 183 Neb. 94, 158 N.W.2d 275 (1968). In *Ritchie* we went on to say at 97, 98, 158 N.W.2d at 277:

> " 'The basis of the foregoing general rule is that the driver of an automobile is legally and mandatorily obligated to keep such a lookout that he can see what is plainly visible before him and to operate his automobile in such a manner that he can stop it and avoid collision with any object *in front of him.*' "

(Emphasis supplied.)

The foregoing rule is not applicable here. Plaintiffs' driver was not approaching any vehicle or object in front of him, but was approaching an intersection on the favored highway

protected by stop signs, where Kelly Schmall was stopped before pulling out in front of him. The applicable rules are:

> A driver of a motor vehicle about to enter a street or highway protected by stop signs is required to come to a full stop as near the right-of-way line as possible before driving onto such street or highway. After having stopped, such driver shall yield the right-of-way to any vehicle which is approaching so closely on the favored highway as to constitute an immediate hazard if the driver at the stop sign moves his vehicle into or across such intersection. . . . It is such a driver's duty to look both to the right and to the left and to maintain a proper lookout for the safety of himself and others traveling on the streets. . . .

> A person traveling on a favored street protected by stop signs of which he has knowledge may properly assume, until he has notice to the contrary, that motorists about to enter from a nonfavored street will observe the foregoing rules.

*Hartman v. Brady, supra* at 562, 270 N.W.2d at 911-12.

Plaintiffs' driver was traveling on a national highway within the speed limit. Defendants would require him to operate at such a speed as he approached an intersection protected by stop signs so as to stop or swerve and avoid a collision with a motorist who pulls in front of him, regardless of his distance from the intersection at the time. Plaintiffs' driver had no duty to engage in such defensive driving. The trial court was correct in concluding that plaintiffs' truck was at such distance as to constitute a hazard when Kelly Schmall pulled out in front of it and that her negligence in doing so was the sole proximate cause of the accident. Any violation of statutes regarding maximum load of the truck or required braking distance was not evidence of any negligence that was a proximate cause of the accident.

In allowing plaintiffs the sum of $13,225.18 as damages for loss of use of the truck until a suitable replacement could be obtained, the trial court departed from our prior holdings as to measure of damages for damage to a motor vehicle. In *Helin v. Egger*, 121 Neb. 727, 728-29, 238 N.W. 364, 365 (1931), we established the rules to measure the damages by quoting with approval from *Langham v. Chicago, R. I. & P. R. Co.*, 201

Iowa 897, 208 N.W. 356 (1926), as follows:

"When the automobile is totally destroyed, the measure of damages is its reasonable market value immediately before its destruction.

"Where the injury to the car can be repaired, so that, when repaired, it will be in as good condition as it was before the injury, then the measure of damages is the reasonable cost of repair plus the reasonable value of the use of the car while being repaired, with ordinary diligence, not exceeding the value of the car before the injury.

"When the car cannot, by repair, be placed in as good condition as it was in before the injury, then the measure of damages is the difference between its reasonable market value immediately before and immediately after the accident."

Our holdings have consistently adhered to these rules. *Lund v. Holbrook*, 153 Neb. 706, 46 N.W.2d 130 (1951); *Dorn v. Sturges*, 157 Neb. 491, 59 N.W.2d 751 (1953); *Riley v. National Auto Ins. Co.*, 162 Neb. 658, 77 N.W.2d 241 (1956); *Wylie v. Czapla*, 168 Neb. 646, 97 N.W.2d 255 (1959); *Neill v. McGinn*, 175 Neb. 369, 122 N.W.2d 65 (1963); *Sky Harbor Air Service, Inc. v. Lang*, 194 Neb. 428, 231 N.W.2d 704 (1975); *Hatch v. Heim*, 200 Neb. 735, 265 N.W.2d 444 (1978); *Husebo v. Ambrosia, Ltd.*, 204 Neb. 499, 283 N.W.2d 45 (1979).

Generally, the law in Nebraska has been that damages allowed are limited to an amount not to exceed the fair market value of the motor vehicle immediately prior to the accident. Thus, previously in those instances where the vehicle was totally destroyed or where repairs could not restore it to substantially its condition before the collision, no damages for loss of use were allowed. Even where the vehicle could have been repaired, damages for loss of use were allowed only to the extent that the combined cost of repair and the loss of use did not exceed the value of the vehicle before the accident.

The trial court relied on *Long v. McAllister*, 319 N.W.2d 256 (Iowa 1982), in allowing loss of use damages to the totally destroyed truck. Ironically, the Iowa Supreme Court in *Long* allowed loss of use damages, and in so doing modified (in effect

overruled) its prior rules first formulated in *Langham v. Chicago, R. I. & P. R. Co., supra*, the case we cited with approval when our identical rules were established in *Helin v. Egger, supra*. The measure of recovery in all civil cases is compensation for the injury sustained. *Miller v. Kingsley*, 194 Neb. 123, 230 N.W.2d 472 (1975); *Abel v. Conover*, 170 Neb. 926, 104 N.W.2d 684 (1960). Considering that longstanding rule of law, we deem it appropriate to reexamine our rules which limit loss of use damages.

It does not appear that in any of our prior holdings we articulated any rationale for the limitation of damages to the market value of the vehicle immediately before the accident. In the opinion of the Iowa Supreme Court,

> Damages for destruction of chattels were based on analogy to conversion. The reasonable market value of the chattel was viewed as adequate compensation under this concept in the common law action of trover. The rigidity of the analogy obscured any distinction between destruction of chattels generally and destruction of chattels of such utility that the owners incurred loss of use expense. Perhaps this distinction became important only with the advent of the motor vehicle and the practice of motor vehicle leasing and rental.

*Long v. McAllister, supra* at 259.

In D. Dobbs, Handbook on the Law of Remedies, *Tangible Property—Damages, Destruction, and Retention* § 5.11 at 384-85 (1973), three arguments are suggested for denying loss of use damages:

> Loss of use claims are most commonly asserted for a period of time when the chattel is being repaired, but sometimes the chattel is destroyed and is not repairable. In such cases, loss of use claims are sometimes asserted for the period required to replace the chattel. A number of courts have refused to permit loss of use awards in cases of total destruction, and have limited recovery in such cases to the value of the article. Destruction, of course, was closely analogous to a conversion, where the measure of damages was the value of the chattel at the time of conversion, and it was natural enough to import the

conversion measure into the destruction situation. There was probably some thought that the market value of the chattel—which reflected the right to use it gainfully—plus interest for the time the owner was deprived of it, actually furnished full compensation. Another argument made against granting loss of use where there was total destruction sounds rather strange in modern ears. The authors of Sedgwick on Damages argued that when compensation for the whole value of the property destroyed is sought, "it is upon the theory that the plaintiff's entire interest in the property ceased at the time of the injury, and was replaced by a right to have the value of the property in money. Since, therefore, the plaintiff no longer has title to the property, he can no longer claim that he might make a future gain from it. . . ." Such an argument probably would not be accepted, or even thought of, today. It is a conceptual argument that does not interest itself in whether the owner has actually lost something of value beyond the market value of his property; it interests itself only in a legal concept—passage of title—that is not a part of the real world of facts and has no significant relation to important facts of actual loss. A third argument against granting loss of use recovery where a chattel is totally destroyed is that to grant such recoveries opens the door to speculation. This argument, if acceptable, would seem to apply equally to any loss of use claim, whether there was destruction or merely damage. But the argument does not seem acceptable, because there is no essential reason why loss of use claims must be speculative. There is nothing speculative about the cost of a rental car for a specified time while the *damaged* vehicle is being repaired, nor is there anything speculative about the cost of a rental car for a specified time while a *destroyed* vehicle is being replaced. If loss of use leads also to loss of profits, they are speculative as much or as little as other claims of lost profits and the question of speculation becomes in the end, a question whether the evidence of loss is sufficient in each case.

The number of jurisdictions which allow loss of use damages even in total destruction cases is extensive and reflects the trend in this area. See Annot., Recovery for Loss of Use of Motor Vehicle Damaged or Destroyed, 18 A.L.R.3d 497 (1968). See, also, Restatement (Second) of Torts § 927 (1979).

The court in *Long v. McAllister,* 319 N.W.2d 256, 259 (Iowa 1982), expressed well the illogic of its former rules (the same as our present rules):

> [W]hen the vehicle can be restored by repair to its prior condition, the owner is not only entitled to compensation for the reasonable cost of repair but for reasonable loss of use damages. Although market value is nevertheless a ceiling on recovery even in this situation, full compensation is possible when the cumulated damages do not exceed the limitation.
>
> In other cases, however, the present rules plainly do not permit full compensation. Loss of use damages will be incurred as readily when a vehicle is totally destroyed or when it cannot be restored by repair to its prior condition as when the vehicle can be restored by repair. Just as loss of use damages are necessary for full compensation when the vehicle can be restored to its prior condition, they are warranted when the vehicle is destroyed or cannot be so restored. No logical basis exists for cutting them off when the total reaches the vehicle's market value before the injury.

Compensation for injuries sustained as to the measure of recovery means *full* compensation, an amount that will make the damaged party whole. Denying loss of use damages as a matter of law thwarts this fundamental principle. Therefore, our rules are modified as follows:

1. Where the damage to personal property can, at a reasonable cost, be repaired and the property restored to substantially its condition immediately before the damage occurred, and the cost of repair does not exceed the difference in market value of the property before and after the injury, then the measure of damages is the reasonable cost of repair plus the reasonable value of the loss of use of the property for the reasonable amount of time required to complete the repair.

2. Where the damage to personal property is such that it cannot be repaired and the property thereby restored to substantially its condition immediately before the damage occurred, or when the reasonable cost of repair exceeds the difference in market value of the property immediately before and immediately after the injury, the measure of damages is the lost market value plus the reasonable value of the loss of use of the property for the reasonable amount of time required to obtain a suitable replacement.

The reasonable value of the loss of use of personal property is generally the fair rental value of property of a like or similar nature or the amount actually paid for rental, whichever is less. *Husebo v. Ambrosia, Ltd.*, 204 Neb. 499, 283 N.W.2d 45 (1979). Where property used for commercial or business purposes cannot be rented, then loss of profits may establish the reasonable value of the loss of use. *Kunkel v. Cohagen*, 151 Neb. 774, 39 N.W.2d 609 (1949).

To the extent that any prior cases would limit the total compensation for damage to personal property to the fair market value of the property immediately before the injury, they are expressly overruled. The new rules shall apply to this case, any pending case in which error has been presented on the issue, and all cases tried after the date of filing of this opinion.

At the hearing on defendants' motion for new trial, plaintiffs requested and were permitted to amend the prayer of their petition from $62,807.77 to $63,172.58, the latter amount to correspond with the court's judgment. The difference in amount is $364.81 and clearly was done to conform to the proof at trial. A pleading may be amended in furtherance of justice, to conform to the proof, if the proposed amendment does not change substantially the claim or defense. The decision to allow or deny such amendment rests in the sound discretion of the court. Neb. Rev. Stat. § 25-852 (Reissue 1985); *West Town Homeowners Assn. v. Schneider*, 215 Neb. 905, 341 N.W.2d 588 (1983). The trial court acted well within its discretion in permitting the amendment.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS TO DISMISS.