STATE OF NEBRASKA, APPELLEE, V. RANDY PIERCE, APPELLANT.
439 N.W.2d 435

Filed April 27, 1989.   No. 88-360.

William L. Binkard for appellant.

Robert M. Spire, Attorney General, and Donald E. Hyde for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

A jury convicted Randy Pierce of criminal mischief in violation of Neb. Rev. Stat. § 28-519(1)(a) (Reissue 1985). The court sentenced Pierce under § 28-519(2), Class IV felony punishment for criminal mischief resulting in pecuniary loss exceeding $300.

Pierce assigns as error the district court's failure to grant defendant's motion for a directed verdict of acquittal, failure to instruct properly on "pecuniary loss" relative to the crime of "criminal mischief," failure to direct a verdict on the issue of pecuniary loss relative to the grades of criminal mischief, failure to declare a mistrial based on the prosecutor's assertion in opening statement that the defendant would testify, and failure to declare a mistrial based on the prosecutor's statement in closing argument that the defendant was represented by court-appointed counsel.

## APPLICABLE STATUTE

Insofar as the prosecution of Pierce is concerned, the applicable statute, § 28-519, states:

(1) A person commits criminal mischief if he or she:

(a) Damages property of another intentionally or recklessly ....

(2) Criminal mischief is a Class IV felony if the actor intentionally causes pecuniary loss in excess of three hundred dollars ....

(3) Criminal mischief is a Class II misdemeanor if the actor intentionally causes pecuniary loss in excess of one hundred dollars.

(4) Criminal mischief is a Class III misdemeanor if the actor intentionally or recklessly causes pecuniary loss in an amount of one hundred dollars or less, or if his or her action results in no pecuniary loss.

## OPENING STATEMENT

In his opening statement, the prosecutor told the jury that Pierce "will testify but we do not know which version of the facts to which he will testify." At that time, Pierce's attorney requested a mistrial on account of the prosecutor's remark as a violation of Pierce's constitutional right to remain silent. After the court denied Pierce's mistrial motion, the jury received no instruction concerning the prosecutor's remark.

## EVIDENCE AT TRIAL

Keith Lynch was an employee of a liquor store. Apparently, bad feelings existed between Pierce and Lynch as the result of Pierce's attempt to pass forged checks at the liquor store.

On October 10, 1987, when Lynch had left the liquor store and was driving his Chevrolet pickup, he noticed another vehicle following closely behind his pickup. After a short distance, Lynch recognized Pierce as the driver of the following vehicle. Pierce pulled his car alongside Lynch's pickup and yelled obscenities at Lynch. Pierce continued following Lynch's pickup, eventually pulled alongside Lynch, and drove his car into the pickup, denting the pickup's left front fender and bending its bumper. Without stopping after impact, Pierce drove away.

An automobile repairman testified that the fair and reasonable cost of repair to Lynch's pickup as a result of the collision with Pierce's car was $595.94. The record does not reflect any evidence regarding the market value of Lynch's vehicle. Pierce testified in his own case.

At the conclusion of all evidence, Pierce moved for a directed verdict based on the absence of evidence regarding the value of Lynch's pickup. The court overruled Pierce's motion.

## CLOSING ARGUMENT

During closing argument, the prosecutor mentioned that an indigent defendant has a constitutional right to court-appointed counsel "paid for by the taxpayers . . . as was done in this case." Pierce requested a mistrial. The court refused to grant a mistrial and immediately admonished the jury that the prosecutor's remark was "improper, completely irrelevant" and instructed the jury "to completely disregard the comment."

## INSTRUCTIONS

Pierce objected to any instruction which did not refer to the damaged property's market value in relation to "pecuniary loss." Pierce moved for a directed verdict on the issue of "pecuniary loss" relative to the grades of criminal mischief. The court overruled Pierce's directed verdict motion and instructed the jury that the State must prove, beyond a reasonable doubt, that Pierce intentionally damaged Lynch's property and caused Lynch to sustain a pecuniary loss in excess of $300. The court defined pecuniary loss as "loss in the form of money, property, commercial interest, or anything else, the primary significance of which is economic loss."

## DIRECTED VERDICT

On a defendant's motion to dismiss for insufficient evidence of the crime charged against such defendant, the State is entitled to have all its relevant evidence accepted or treated as true, every controverted fact as favorably resolved for the State, and every beneficial inference reasonably deducible from the evidence.

*State v. Watkins*, 227 Neb. 677, 681-82, 419 N.W.2d 660, 663 (1988); *State v. Lane*, 227 Neb. 687, 419 N.W.2d 666 (1988). In a criminal case a court can direct a verdict only when (1) there is a complete failure of evidence to establish an essential element of the crime charged, or (2) evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Brown*, 225 Neb. 418, 405 N.W.2d 600 (1987).

## CRIMINAL MISCHIEF: THE SUBSTANTIVE OFFENSE

Regarding the criminal charge against Pierce, the offense of criminal mischief is statutorily defined in § 28-519(1): "A person commits criminal mischief if he or she: (a) Damages property of another intentionally or recklessly." The statutory characterization or definition of "criminal mischief" is self-subsistent or self-contained, that is, the statute proscribing "criminal mischief" specifies all the essential parts or constituents of the crime, which is committed if the actor intentionally or recklessly damages the property of another. "Pecuniary loss," mentioned in § 28-519(2), (3), and (4), is not an element of the criminal offense designated as "criminal

mischief." Rather, "pecuniary loss" determines the grade of the offense and relates to the punishment which may be imposed on conviction for the offense of criminal mischief, an aspect of Pierce's case which will be discussed later in this opinion.

Intent is the state of the actor's mind when the actor's conduct occurs. *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985). "*Intentionally* means willfully or purposely, and not accidentally or involuntarily." *State v. Schott*, 222 Neb. 456, 462, 384 N.W.2d 620, 624 (1986). The intent involved in conduct is a mental process and may be inferred from the conduct itself, the actor's language in reference to the conduct, and the circumstances surrounding an incident. *State v. Schott, supra.* "When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements involve a question of fact and may be proved by circumstantial evidence." *State v. Hoffman*, 227 Neb. 131, 140, 416 N.W.2d 231, 237 (1987).

The fact of the dented fender and bent bumper on Lynch's pickup certainly establishes that Pierce caused damage to Lynch's property in the collision between the vehicles. Whether Pierce intentionally caused the damage to Lynch's pickup was a question for the jury in view of Pierce's apparent animosity toward Lynch and the circumstances of the collision, including Pierce's yelling obscenities at Lynch and circumstances surrounding the vehicular impact. The State presented evidence with probative value to sustain a finding of Pierce's guilt of criminal mischief. We conclude that the evidence against Pierce and the evidentiary inferences for the State warranted submission of the case to the jury. The district court correctly overruled Pierce's request for a directed verdict of acquittal.

## NATURE OF PECUNIARY LOSS

As noted above, "pecuniary loss" is not an element of the crime "criminal mischief." According to § 28-519(1)(a), the crime of criminal mischief is committed when one intentionally or recklessly damages another's property, regardless of pecuniary loss which may or may not result from the defendant's conduct.

The function of "pecuniary loss" in relation to the crime of criminal mischief is establishment of the grade of the offense to

determine which punishment or penalty may be imposed on conviction for criminal mischief. Although pecuniary loss is not an essential element or constituent of the criminal conduct called "criminal mischief," pecuniary loss is important in a prosecution for criminal mischief because, under § 28-519(2), (3), and (4), the greater the extent of pecuniary loss, the more severe the punishment which may be imposed on conviction for criminal mischief.

Similar to the preceding analysis concerning the grades of criminal mischief is this court's analysis regarding the grades of theft, namely, the "grading of theft offenses" under Neb. Rev. Stat. § 28-518 (Reissue 1985). As expressed in *State v. Reed*, 228 Neb. 645, 651-52, 423 N.W.2d 777, 781-82 (1988):

> By statute, crimes are classified between serious and minor offenses, all distinguished by the possible penalties that may be imposed. . . . Neb. Rev. Stat. § 28-518 (Reissue 1985) grades theft offenses into four different classes dependent upon the value of the thing (property) involved. For example, theft of property valued at over $1,000 is a Class III felony and theft of property valued at $100 or less is a Class II misdemeanor. In the event of a defendant's conviction in theft cases, the sentencing judge must know the value of the property as a guide to the possible maximum and minimum sentences. In jury trials, the jury must find the value of the property taken and convey that fact to the judge in its verdict. § 29-2026.01. [When the indictment charges an offense against the property of another by larceny, embezzlement, or obtaining under false pretenses, the jury, on conviction, shall ascertain and declare in its verdict the value of the property stolen, embezzled, or falsely obtained. Neb. Rev. Stat. § 29-2026.01 (Reissue 1985).]

See, also, *State v. Redding*, 213 Neb. 887, 331 N.W.2d 811 (1983) (four grades of larceny or theft with common elements except the value of the goods stolen).

In the light of our discussion about the substantive offense of criminal mischief, we point out that the grades of criminal mischief do not constitute the greater and lesser-included offenses within the crime of criminal mischief. Rather, criminal

mischief is a substantive criminal offense for which, on conviction, punishment varies according to the pecuniary loss specified in the grades of the substantive offense. As noted in *State v. Olsan, ante* p. 214, 219, 436 N.W.2d 128, 132 (1989):

> "A lesser included offense is one which is necessarily established by proof of the greater offense." *State v. Colgrove*, 197 Neb. 375, 376, 248 N.W.2d 780, 781 (1977). To be a lesser-included offense, the elements of the lesser offense must be such that it is impossible to commit the greater offense without simultaneously committing the lesser offense. *State v. Lovelace*, 212 Neb. 356, 322 N.W.2d 673 (1982).

Regarding the grades of criminal mischief as a violation of § 28-519, existence of pecuniary loss and the extent or amount of pecuniary loss, specified in § 28-519(2), (3), and (4), are questions for the fact finder. Cf., *State v. Hayes*, 187 Neb. 325, 190 N.W.2d 621 (1971) (value of property involved in grand larceny-theft; jury question); *State v. Weik*, 206 Neb. 217, 292 N.W.2d 289 (1980) (value of property is a fact question for the jury in a prosecution for grand larceny-theft). A specific monetary amount, alleged in conjunction with "pecuniary loss" resulting from criminal mischief in violation of § 28-519, informs the court and a defendant that the prosecution involves a felony and potential felony punishment on conviction for criminal mischief.

Thus, on a reading of § 28-519, the criminal mischief statute, it is clear that different grades of criminal mischief depend on pecuniary loss, that is, the amount of monetary damage caused by the criminal mischief. However, § 28-519 does not prescribe a method to determine pecuniary loss.

In *State v. Weik, supra*, and *State v. Carroll*, 186 Neb. 148, 181 N.W.2d 436 (1970), this court held that the rules for establishing value in civil cases are applicable to distinguish between grand and petit larceny, that is, the grades for the crime designated "theft."

Pierce suggests that "pecuniary loss" in reference to criminal mischief should be ascertained by the rule governing damages recoverable in a civil action for injury to personal property,

namely, the rule expressed in *Chlopek v. Schmall*, 224 Neb. 78, 396 N.W.2d 103 (1986). In *Chlopek*, we enunciated a rule which, in substance, allowed recovery of damages determined by the reasonable cost of repair for damage to personal property, provided, if the damaged property could not be repaired, or if the cost of repair exceeded the fair market value of the damaged item, the property's lost market value determined the amount of damages recoverable. *Chlopek* also authorized recovery of damages for lost use of personal property during repair or until a suitable replacement was obtained for the unrepairable property.

If the rule expressed in *Chlopek* were transposed into § 28-519(1)(a), that is, a case of criminal mischief based on intentional or reckless damage to another's property, the State's prima facie case would have to include evidence of the reasonable cost of repair and market value for the damaged property. However, damaged property, which is the subject of § 28-519(1)(a), is not restricted to personal property, but may include real property as well. Also, by its very nature, damaged real estate may defy repair or an estimate of repair; for example, agricultural grassland damaged by vandalism as a form of criminal mischief. Reference to market value, before and after the criminal mischief, may be a standard, and sometimes the only standard, to determine pecuniary loss involving the illustrative grassland inasmuch as repair of the real property is impossible. Still other property, such as a tree in a public park, may be damaged or destroyed. The before and after value of the park, with and without the damaged or destroyed tree, is an impracticable determinative of damage. In the example of the damaged or destroyed tree in a public park, perhaps a more appropriate determinative of damage is the reasonable replacement cost of the damaged or destroyed tree. At other times, various forms of pecuniary loss caused by criminal mischief are not practicably expressible in terms of the restitutory measures for loss and recoverable damages in civil actions because the property damaged may lack a readily ascertainable market or replacement value. See *State v. Palmer*, 207 Mont. 152, 673 P.2d 1234 (1983). Thus, the extent of pecuniary loss will necessarily depend on the nature of the

property damaged by the conduct characterized as criminal mischief. As becomes readily apparent, if rules pertaining to recoverable civil damages are applied to determine pecuniary loss in a criminal mischief case, the extent of pecuniary loss will vary as the object of criminal mischief varies from case to case. Although appropriate reference to the civil rules may provide some assistance relative to ascertaining pecuniary loss from injury or damage to particular property, indiscriminate transposition of all civil damage rules for application in criminal mischief cases may create more problems than would be ostensibly solved by such transposition. All of this leads to the conclusion that there is no universal and comprehensive formula or method to determine the extent of pecuniary loss in relation to criminal mischief, namely, intentional or reckless damage to another's property in violation of § 28-519(1)(a).

Therefore, we hold that "pecuniary loss," used in § 28-519(2), (3), and (4), means monetary loss suffered by another as the result of the defendant's conduct which constitutes criminal mischief under § 28-519.

"A verdict in a criminal case must be sustained if the evidence, viewed and construed most favorably to the State, is sufficient to support that verdict." *State v. Brown*, 225 Neb. 418, 428, 405 N.W.2d 600, 606 (1987); *State v. Robertson*, 223 Neb. 825, 394 N.W.2d 635 (1986).

In Pierce's case, the State introduced evidence that Lynch had sustained a monetary loss through the cost of repair for Lynch's damaged pickup. Pierce had the opportunity, either through cross-examination of the State's witnesses or by introduction of evidence in his own case, to contradict the State's evidence of pecuniary loss or otherwise show that Lynch's monetary loss was not in the extent or degree asserted by the State. The evidence was sufficient, under proper instruction, to support a verdict against Pierce on the issue of felony pecuniary loss.

All instructions, read conjunctively, must correctly state the law, adequately state the issues, and not mislead the jury. *State v. Ryan*, 226 Neb. 59, 409 N.W.2d 579 (1987). A trial court, whether requested or not, must instruct the jury on the law of the case, and failure to do so constitutes prejudicial error. *State*

*v. Clayburn,* 223 Neb. 333, 389 N.W.2d 314 (1986).

In view of the characterization or definition we have used concerning "pecuniary loss" in reference to criminal mischief in violation of § 28-519, the court's instruction on the grade of Pierce's criminal mischief is incorrect. The instruction did not conform with the meaning of "pecuniary loss," which we have set forth above, and permitted the jury to speculate about various losses, including a loss of a commercial interest "or anything else" which involved "economic loss." Consequently, the instruction in Pierce's case was incomplete and misleading, constituting prejudicial error.

## MISTRIAL BASED ON PROSECUTORY MISCONDUCT

*Prosecutory duty.*

Prosecutors are charged with the duty of conducting criminal trials in such a manner that an accused may have a fair trial. *State v. Olsan, ante* p. 214, 436 N.W.2d 128 (1989); *Pierce v. State,* 173 Neb. 319, 113 N.W.2d 333 (1962).

*Mistrial.*

The disposition of Pierce's appeal requires our deciding whether the prosecutor's remark in his opening statement and his comment during the closing argument were unfairly prejudicial and warranted a mistrial.

> A mistrial results in nullification of a pending jury trial. In order to prevent defeat of justice or to further justice during a jury trial, a mistrial is generally granted at the occurrence of a fundamental failure preventing a fair trial in the adversarial process. Some examples are an egregiously prejudicial statement by counsel, the improper admission of prejudicial evidence, or the introduction of incompetent matters to the jury, to the extent that any damaging effect cannot be removed by proper admonition or instruction to the jury. [Citations omitted.]
>
> Courts have considerable discretion in passing on the motions for mistrial, to the end that justice be more nearly effectuated.

*State v. Archbold,* 217 Neb. 345, 351, 350 N.W.2d 500, 504 (1984).

As further noted in *State v. Archbold, supra* at 355, 350

N.W.2d at 506-07:

> A mistrial may be warranted where unfairness has been injected into a jury trial and so permeates the proceedings that no amount of admonition to the jury can remove the unfairness to a party. . . . Therefore, a mistrial may be the only recourse on those occasions when admonition to the jury cannot eradicate the unfair prejudice to a party, or, as expressed in *Dunn v. United States*, 307 F.2d 883, 886 (5th Cir. 1962), "Otherwise stated, one 'cannot unring a bell'; 'after the thrust of the saber it is difficult to say forget the wound'; and finally, 'if you throw a skunk into the jury box, you can't instruct the jury not to smell it'."

*Defendant's right to remain silent.*

A prosecutor's comment on a defendant's silence in the defendant's trial is a violation of an accused's right to remain silent under the 5th and 14th amendments to the U.S. Constitution and under article I, § 12, of the Nebraska Constitution. *State v. Donald*, 199 Neb. 70, 256 N.W.2d 107 (1977); *Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965).

The prohibition against a prosecutor's comment on a defendant's right to remain silent applies throughout a trial, including the opening statement and closing argument during the defendant's trial. *State v. Turner*, 433 A.2d 397 (Me. 1981). In an opening statement for a jury trial, a prosecutor's comment concerning the necessity of the defendant's testimony or an expression concerning the plausibility or credibility of anticipated testimony from a defendant violates an accused's right to remain silent at trial. For example, a prosecutor's comments or expressions in opening statements were improper in the following: *Meadows v. State*, 291 Ark. 105, 111, 722 S.W.2d 584, 587 (1987) (question, " 'What's he going to say after all this evidence is presented?' "); *Smith v. State*, 358 So. 2d 1137 (Fla. App. 1978) (comment that the basic issue was witness credibility—whether the jury would believe the State's witnesses or the defendant); *Knopp v. State*, 233 Ind. 435, 120 N.E.2d 268 (1954) (comment that the defendant was afraid to take the witness stand because the defendant knew what the prosecutor would do to him on cross-examination); *State v.*

*Turner, supra* at 401 (comment that the " 'defendant will surely try to raise doubts in your mind' " about the perpetrator's identity in the crime charged); *Bird v. State*, 527 S.W.2d 891, 893 (Tex. Crim. App. 1975) (in a murder trial and in reference to a firearm with a silencer, the prosecutor turned to the defendant and asked, " '[W]here did you get it?' ").

The fact that Pierce actually testified renders the prosecutor's remark no less objectionable and reprehensible. In *Coleman v. The State*, 111 Ind. 563, 565, 13 N.E. 100, 101 (1887), during opening statement the prosecutor told the jury: " 'You should watch the evidence closely. We do not know that the defendant will go upon the stand. He has not been sworn; I noticed that. If he should go upon the stand you should watch—' " at which point defense counsel objected. Later, the defendant testified on his own behalf. The Indiana Supreme Court stated:

> The effect of the remarks must have been either to coerce the defendant to testify, as has been said, "with a halter about his neck," or to induce him to remain silent, with knowledge that the jury had been challenged in the outset to observe whether or not he would go upon the stand, under the goad of the prosecutor's statement.

*Id.* at 566, 13 N.E. at 101. See, also, *State v. Lindsey*, 578 S.W.2d 903 (Mo. 1979) (prosecutor's statement in opening, " 'Mr. Lindsey doesn't have to go forward with any evidence if he doesn't wish to. He doesn't have to take the stand if he doesn't want to' " (emphasis omitted); held, a defendant's right to remain silent prohibits not only a prosecutor's comment on the defendant's failure to testify but also a prosecutor's comment which compels a defendant to testify).

An accused's right to remain silent at trial, accorded by the 5th and 14th amendments to the U.S. Constitution and article I, § 12, of the Nebraska Constitution, is not limited to a statement concerning a defendant's failure to testify at trial, but includes the prosecutor's use of any language or device which compels a defendant to testify.

In Pierce's case, then, at issue is the prosecutor's comment in his opening statement that Pierce "will testify but we do not know which version of the facts to which he will testify." Did the prosecutor's statement violate Pierce's constitutional right to

remain silent and inject unfair prejudice into Pierce's trial?

The prosecutor's remark immediately made Pierce's credibility an issue in the case before introduction of any evidence. Moreover, the prosecutor's remark presented a dilemma: Pierce could remain silent and thereby give credence to, or even substantiate, the invidious innuendo that he had previously given inconsistent versions of the incident on which the criminal charge was based, or Pierce could take the witness stand and recount a version without any inconsistency, thereby responding to the prosecutor's intimation of inconsistency but subjecting himself to cross-examination. If Pierce failed to take the stand, the jury might conclude that his silence buttressed the prosecutor's remark about Pierce's multiple versions of the incident, that is, Pierce did not have a consistent credible account of the incident and remained silent to avoid entanglement in a web of inconsistency as an indication of guilt. On the other hand, if Pierce did take the stand, but failed to provide an absolutely consistent account of the incident, the jury might indulge in the belief that Pierce's guilt or innocence turned on consistency in Pierce's testimony rather than the State's meeting its burden to prove Pierce's guilt by evidence beyond a reasonable doubt. In this manner, the State suggested the hypothesis to the jury: If Pierce's testimony involved any inconsistency, his guilt was established.

"[W]e do not know which version of the facts to which he will testify." In that statement, the prosecutor informed the jury that Pierce had expressed more than one version or account of the incident in question. How did the prosecutor know that Pierce had expressed more than one version? The very insinuation of multiple versions could lead a jury to believe that Pierce, before trial, had admitted his criminality in the charged offense. At that point, in-court evidence would be relegated to irrelevance because Pierce had already admitted his guilt.

We conclude that the prosecutor's statement in his opening address to the jury compelled Pierce to testify and was a violation of Pierce's constitutional right to remain silent. We do not decide whether any appropriate cautionary instruction might have eliminated the prejudice from the prosecutor's statement inasmuch as no instruction was given concerning the

prosecutor's comment. See *State v. Ross*, 220 Neb. 843, 846, 374 N.W.2d 228, 230 (1985): " '[A]n objection followed by admonition or instruction is typically presumed to be sufficient to dispel prejudice.' " (Quoting from *United States v. Young*, 470 U.S. 1, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985).) See, also, *State v. Borchardt*, 224 Neb. 47, 395 N.W.2d 551 (1986). Therefore, the prosecutor's misconduct in his opening statement to the jury prevented a fair trial for Pierce, whose motion for mistrial should have been granted under the circumstances. Consequently, we set aside Pierce's conviction for criminal mischief.

*Court-appointed counsel.*

Although we have set aside Pierce's conviction, nonetheless, in view of a prospective retrial of Pierce's case, we are obliged to make a further observation regarding the prosecutor's comments during summation to the jury lest similar conduct occur on retrial. During summation, the prosecutor referred to the fact that, as a matter of constitutional right, Pierce's court-appointed counsel was "paid for by the taxpayers." A prosecutor's argument must be based on evidence introduced rather than on matters not in evidence which serve to divert jurors from the consideration whether the accused is guilty of the crime charged. *State v. Perry*, 274 Minn. 1, 142 N.W.2d 573 (1966). A prosecutor's appeal to the self-interest of jurors as taxpayers is improper. *State v. Majors*, 182 Kan. 644, 323 P.2d 917 (1958). See, also, *Commonwealth v. Joyner*, 469 Pa. 333, 365 A.2d 1233, 1234 (1976) (prosecutor's argument that the jury has " 'borne witness to the unbelievable length our system of justice goes to protect the rights of an accused person' " was improper (emphasis omitted)); *State v. Perry, supra* at 11, 142 N.W.2d at 579 (prosecutor's argument that " '[t]his whole thing [defendant's trial], the whole burden of this whole affair, is carried by taxpayers . . . . This is a solely supported tax function,' " was improper); *State v. Majors, supra* at 647, 323 P.2d at 920 (prosecutor's statement, " 'It cost a lot of money for the taxpayers of Atchison County to put on this trial,' " was improper); *State v. Muskus*, 158 Ohio St. 276, 282, 109 N.E.2d 15, 18 (1952) (prosecutor's statement that it made him " 'boil to know that we have to waste Stark county taxpayers' money to

try a fellow like that' " was error).

The prosecutor's reference to the fact of court-appointed counsel for Pierce is so far removed from relevance to the issue of Pierce's guilt that the only explanation is the prosecutor's attempt to inject unfair prejudice into the minds of the jurors-taxpayers who were asked to determine whether Pierce was guilty of the criminal charge. Consequently, we find that the prosecutor's remark about payment of taxes in reference to court-appointed counsel for Pierce was improper argument.

In Pierce's case, however, the court admonished the jury to "completely disregard the comment" concerning Pierce's court-appointed attorney. Thus, although we do not condone the prosecutor's improper appeal to the jury's self-interest as taxpayers, we are unable to conclude that the prosecutor's remark in final argument, in the light of the precautionary instruction given, resulted in sufficient prejudice to require a mistrial. See *State v. Ross, supra.*

While some may consider prosecutory misconduct only as a violation of procedural precepts pertaining to a fair trial, we again call attention of prosecutors to our recent reminder in *State v. Olsan, ante* p. 214, 436 N.W.2d 128 (1989), and our earlier reminder in *State v. Borchardt, supra* at 57, 395 N.W.2d at 558: " 'In appearing in his professional capacity before a tribunal, a lawyer shall not: (1) State or allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence.' " (Quoting from Canon 7, DR 7-106(C)(1) of the Code of Professional Responsibility.)

## CONCLUSION

Evidence is sufficient to sustain Pierce's conviction for criminal mischief in violation of § 28-519(1)(a) and also to sustain the finding of fact necessary for imposition of the felony punishment prescribed by § 28-519(2). However, the prosecutor's comment during the opening address to the jury was prejudicial and prevented a fair trial of Pierce—prejudicial error which necessitates reversal of Pierce's conviction for criminal mischief. Further, the erroneous instruction on pecuniary loss necessitates our setting aside the jury's finding concerning the extent of pecuniary loss from Pierce's alleged

criminal mischief. The error in Pierce's case is a "trial error" which does not bar Pierce's retrial after reversal of his conviction. See *Burks v. United States*, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). See, also, *Lockhart v. Nelson*, _____ U.S. _____, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988). Hence, we set aside Pierce's conviction for criminal mischief and remand this matter to the district court for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

HASTINGS, C.J., and BOSLAUGH, J., concur.