IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. ESCH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
TRENT R. ESCH, APPELLANT.

Filed December 17, 2013.    No. A-13-241.

Appeal from the District Court for Custer County: KARIN L. NOAKES, Judge. Affirmed in part, and in part vacated and remanded for further proceedings.

David W. Jorgensen, of Nye, Hervert, Jorgensen & Watson, P.C., for appellant.

Jon Bruning, Attorney General, and J. Kirk Brown for appellee.

INBODY, Chief Judge, and MOORE and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Trent R. Esch appeals from his convictions in the district court for Custer County for criminal mischief and use of a weapon to commit a felony. Because we find that the trial court erred in instructing the jury, we affirm Esch's conviction for criminal mischief but remand the cause for a new trial on the issue of pecuniary loss. We also vacate his conviction for use of a weapon to commit a felony but conclude that double jeopardy would not prohibit a retrial.

## BACKGROUND

Esch was charged with criminal mischief and use of a weapon to commit a felony as a result of events that occurred on March 18, 2012. On that evening, Esch went to the home of the chief deputy of the Custer County Sheriff's Department, Dan Spanel, and fired his rifle at Spanel's patrol car which was parked outside the home. The damage to the vehicle, a 2007 Dodge Durango, included several bullet holes to the side, a punctured gas tank, and a flat tire. The insurance company determined that the vehicle was a total loss.

- 1 -

Much of the evidence presented at trial focused on establishing the amount of pecuniary loss sustained as a result of Esch's actions. Daniel Osmond, the Custer County sheriff, testified regarding the value of Spanel's patrol car. Osmond's testimony will be discussed in more detail in our analysis section below. However, in general, Osmond was permitted to testify, over Esch's foundational objections, that he valued the vehicle at $11,000 to $13,000 before it was damaged. Osmond also stated, over objection, that based on estimates obtained from two local repair shops, he estimated the salvage value of the vehicle to be approximately $3,000. Finally, Osmond testified, over Esch's objection, that the replacement cost for the vehicle was $11,000 to $13,000 as that was the amount needed to replace the damaged vehicle because "[i]n no way did [he] want that vehicle back" after it was damaged.

Osmond admitted that he had no training or certification in valuing vehicles and has never done so as part of his employment. Esch repeatedly objected to Osmond's testimony on the basis of foundation, but the trial court overruled the objections. At the conclusion of the State's evidence, Esch moved to dismiss all of the charges or, in the alternative, for a directed verdict. The trial court overruled Esch's motions, and Esch presented evidence in his defense.

At the close of the presentation of all evidence, Esch renewed his motion to dismiss or for a directed verdict, arguing that the State failed to present sufficient evidence of pecuniary loss to submit that issue to the jury. The trial court overruled Esch's motions. During the jury instruction conference, Esch objected to the court's proposed instruction on the elements of the charged offenses. He requested that a separate instruction be given, informing the jury that if it finds Esch guilty of criminal mischief, it must "then determine beyond a reasonable doubt, from the evidence presented, the pecuniary loss sustained." The court declined to give Esch's requested instruction.

The jury ultimately found Esch guilty of both offenses and determined that the value of the pecuniary loss sustained as a result of the criminal mischief was $7,500. Esch was sentenced to 5 to 7 years' imprisonment for the use of a weapon conviction and a consecutive sentence of 20 to 35 months' imprisonment for the criminal mischief conviction. He was also ordered to pay restitution in the amount of $7,500. Esch timely appeals to this court.

## ASSIGNMENTS OF ERROR

Esch assigns, summarized and renumbered, that the district court erred in (1) allowing Osmond to testify as to the predamage value and the salvage value of the vehicle; (2) failing to sustain Esch's motion to dismiss or, in the alternative, motion for directed verdict at the close of the State's evidence; (3) failing to sustain Esch's motion to dismiss or, in the alternative, motion for directed verdict at the close of the trial and finding sufficient evidence to submit the issue of pecuniary loss to the jury; and (4) failing to give Esch's proposed jury instruction.

## ANALYSIS

*Osmond's Testimony.*

Esch assigns that the district court erred in allowing Osmond to opine as to the predamage value and the salvage value of the vehicle. At trial, Esch continually objected to Osmond's testimony on the basis that his opinions of the vehicle's value lacked foundation. Lay witnesses may testify in the form of opinions or inferences only when those opinions or

inferences are rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue. Neb. Rev. Stat. § 27-701 (Reissue 2008). The matter of values is not generally considered as a subject exclusively for experts, and such testimony will ordinarily be received if the witness shows an acquaintance with the property and is informed as to the state of the market. *Schmailzl v. State*, 176 Neb. 617, 126 N.W.2d 821 (1964); *Dawson v. City of Lincoln*, 176 Neb. 311, 125 N.W.2d 908 (1964). A trial court is given discretion in determining whether a sufficient basis for a lay witness' opinion has been established, and such determination will not ordinarily be disturbed on appeal absent an abuse of that discretion. *Childers v. Phelps County*, 252 Neb. 945, 568 N.W.2d 463 (1997).

In the present case, the record reveals that Osmond was familiar with Spanel's patrol car and had experience with the state of the market as to the value of fleet vehicles. Accordingly, the trial court did not abuse its discretion in allowing Osmond to opine as to the value of the vehicle.

Osmond testified that he is currently the Custer County sheriff and is "in charge" of all of the vehicles in the sheriff's department. The sheriff's department owns a fleet of vehicles, one of which is Spanel's patrol car that was damaged by Esch. Osmond is responsible for purchasing and trading vehicles for the sheriff's department's fleet, and as such, he is generally familiar with the value of vehicles. According to Osmond, fleet vehicles have a different value than personal vehicles. Osmond is also responsible for creating the annual budget for the sheriff's department, and when doing so, he must include the value of each of the sheriff's department's vehicles.

When Spanel's patrol car was purchased, Osmond was not the sheriff, but the then-sheriff discussed vehicle purchases with Osmond, and Osmond saw the purchase price of the Durango. Osmond also personally owns a 2007 Dodge Durango, although he reiterated that the damaged vehicle would have a different value than his personal vehicle because it was part of the sheriff's department's fleet. Osmond also testified that he negotiated with the county's insurance company concerning the damages to Spanel's patrol car and that they reached an agreement as to the value of the vehicle.

Osmond further indicated that he inquired into vehicle pricing guides to determine a value for Spanel's patrol car. He testified that in his experience, purchasing and selling vehicles, personally and professionally, the numbers provided by those guides "are always usually in line with what [he finds]." Osmond also consulted two local repair shops to obtain repair estimates. Although we agree that the sufficiency of Osborn's foundation is a close call, given our standard of review, we cannot say that the district court abused its discretion in overruling Esch's foundational objections and allowing Osmond to testify as to his opinion of the predamage and salvage values of the vehicle.

*Dismissal or Directed Verdict at*
*Close of State's Evidence.*

Esch asserts that the trial court erred in denying his motion to dismiss or, in the alternative, motion for directed verdict at the close of the State's evidence. Specifically, Esch argues that the State failed to adduce sufficient evidence to submit the issue of pecuniary loss to the jury. Because Esch adduced evidence after the court denied his motion for dismissal or directed verdict, he has waived any asserted error related to the court's ruling on the motion.

In a criminal trial, after a court overrules a defendant's motion for a dismissal or a directed verdict, the defendant waives any right to challenge the trial court's ruling if the defendant proceeds with trial and introduces evidence. *State v. Seberger*, 284 Neb. 40, 815 N.W.2d 910 (2012). But the defendant may challenge the sufficiency of the evidence for the conviction. *Id.*

In the present case, Esch's assignment of error specifically asserts that "[t]he trial court erred in failing to sustain Esch's motion to dismiss or in the alternative Esch's motion for directed verdict at the close of the State's evidence." When Esch made his motion to the court, he stated that the reason for the motion was that "the State has not met [its] burden with respect to each one of the counts." The trial court denied the motion. Because Esch then proceeded to present evidence in his own behalf, he has waived the right to assert error in the denial of his motion made at the conclusion of the State's case.

*Sufficient Evidence of Pecuniary Loss.*

Esch also argues that the trial court erred in failing to sustain his motion to dismiss or motion for directed verdict at the close of trial because the State failed to adduce sufficient evidence to submit the issue of pecuniary loss to the jury. In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: We do not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Babbitt*, 277 Neb. 327, 762 N.W.2d 58 (2009). We will affirm a conviction absent prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to support the conviction. *Id.*

A person commits criminal mischief if, inter alia, he intentionally damages the property of another. Neb. Rev. Stat. § 28-519 (Reissue 2008). Criminal mischief is a felony if the defendant caused pecuniary loss of $1,500 or more. See *id.*

Esch does not challenge the sufficiency of the evidence to support the conviction for criminal mischief, but, rather, only the sufficiency of the evidence from which the jury could determine the amount of the pecuniary loss caused by the criminal mischief. The Nebraska Supreme Court has specifically held that the amount of pecuniary loss is not an element of the crime of criminal mischief, but, rather, that the amount of pecuniary loss determines the grade of the offense and relates to the punishment which may be imposed on conviction for the offense of criminal mischief. *State v. Pierce*, 231 Neb. 966, 439 N.W.2d 435 (1989). "'[P]ecuniary loss'" as used in § 28-519 "means monetary loss suffered by another as the result of the defendant's conduct which constitutes criminal mischief." *Pierce*, 231 Neb. at 975, 439 N.W.2d at 442. The existence of pecuniary loss and the extent thereof are questions for the fact finder. *Id.*

The Nebraska Supreme Court noted in *Pierce, supra*, that § 28-519 does not prescribe a method for determining pecuniary loss. The court in *Pierce* refused to indiscriminately transpose all of the civil damage rules for application in criminal mischief cases but found that appropriate reference to the civil rules may provide some assistance. Under the civil rules, damages are determined by the reasonable cost of repair for damage to personal property, provided, if the damaged property could not be repaired, or if the cost of repair exceeded the fair market value of

the damaged item, the property's lost market value determined the amount of damages recoverable. See *Chlopek v. Schmall*, 224 Neb. 78, 396 N.W.2d 103 (1986).

In the present case, when viewing and construing the evidence most favorably to the State, we conclude there was sufficient evidence from which the jury could determine the amount of pecuniary loss. Osmond opined that "the value as [the vehicle] sat that day" was $11,000 to $13,000. Based on this statement, the jury could infer that this range was the value of the Durango as it sat outside of Spanel's house on the day it was damaged. Spanel testified that the insurance company determined that the vehicle was totaled, meaning that its repair cost would have exceeded its postdamage value. Finally, Osmond estimated that the salvage value was approximately $3,000.

Using the civil rule from *Chlopek* as guidance, the amount of pecuniary loss suffered in this case could be calculated based on the lost market value, or the difference between the predamage value of $11,000 to $13,000 and the postdamage value of $3,000. The jury's finding of $7,500 is therefore supported by the evidence. Based on the foregoing, we conclude that there was sufficient evidence presented from which the jury could determine the pecuniary loss, and we find no merit to this assignment of error.

*Jury Instruction.*

Esch claims the district court erred in refusing his proffered jury instruction. Whether a jury instruction is correct is a question of law, regarding which an appellate court is obligated to reach a conclusion independent of the determination reached by the trial court. *State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011). To establish reversible error from a court's refusal to give a requested instruction, a defendant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the defendant was prejudiced by the court's refusal to give the tendered instruction. *State v. Wisinski*, 268 Neb. 778, 688 N.W.2d 586 (2004).

Esch requested a separate jury instruction indicating that the jury must determine, beyond a reasonable doubt, the pecuniary loss sustained as a result of Esch's criminal mischief. The trial court rejected this instruction, and instead, combined the pecuniary loss instruction with the instruction informing the jury of the elements of each offense. The instruction given to the jury provided, "If you find the State has proven the elements of Criminal Mischief beyond a reasonable doubt, you must also determine what, if any, pecuniary loss was suffered."

We conclude that the trial court erred in failing to instruct the jury that it must determine pecuniary loss beyond a reasonable doubt. At the time the Nebraska Supreme Court decided *State v. Garza*, 241 Neb. 256, 487 N.W.2d 551 (1992), value was not an element of the offense of theft. Nonetheless, the Nebraska Supreme Court recognized that the State must prove, by evidence beyond a reasonable doubt, the value of the property that is the subject of the theft charge. While the theft statute has since been amended so that value is now an essential element of theft, we find *Garza* persuasive for the issue before us. Thus, although pecuniary loss is not an element of the offense of criminal mischief, the State must prove the monetary loss caused by the criminal mischief beyond a reasonable doubt. The trial court's failure to instruct the jury accordingly was erroneous and prejudicial to Esch.

As a result, we vacate Esch's sentence for criminal mischief and remand the cause for a new trial on the issue of the amount of pecuniary loss caused by Esch's criminal mischief on March 18, 2012. Once that determination is made, the trial court can properly determine the grade of the offense and then resentence Esch accordingly. In addition, because the offense of use of a weapon to commit a felony is contingent upon the underlying crime being a felony, we must also vacate the use of a weapon conviction. In doing so, we must also determine whether the totality of the evidence admitted by the district court was sufficient to sustain the use of a weapon conviction. If it was not, then concepts of double jeopardy would not allow a remand for a new trial. *State v. Taylor*, 282 Neb. 297, 803 N.W.2d 746 (2011). The Double Jeopardy Clause does not forbid a retrial so long as the sum of all the evidence admitted by the trial court, whether erroneously or not, would have been sufficient to sustain a guilty verdict. *Id.*

We find that the evidence in this case was sufficient to sustain a conviction for the offense of use of a weapon to commit a felony because the evidence presented supported a finding that the amount of pecuniary loss caused by Esch's criminal mischief was equal to or greater than $1,500. Accordingly, the Double Jeopardy Clause does not prohibit a retrial on the charge of use of a weapon to commit a felony.

## CONCLUSION

For the foregoing reasons, we affirm Esch's conviction for criminal mischief but vacate his sentence and remand the cause for a new trial on the issue of pecuniary loss. We also vacate his conviction and sentence for use of a weapon to commit a felony.

AFFIRMED IN PART, AND IN PART VACATED AND
REMANDED FOR FURTHER PROCEEDINGS.