STATE OF NEBRASKA, APPELLEE, V. WILLIAM L. MAX, APPELLANT.
492 N.W.2d 887

Filed September 22, 1992.    No. A-91-429.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Don Stenberg, Attorney General, and Kenneth W. Payne for appellee.

SIEVERS, Chief Judge, and CONNOLLY and MILLER-LERMAN, Judges.

CONNOLLY, Judge.

William L. Max was convicted by a jury of sexual assault of a child, a Class IV felony. See Neb. Rev. Stat. § 28-320.01 (Reissue 1989). He was sentenced to 20 months' to 5 years' imprisonment and given credit for 226 days of time served. Max appeals. We affirm.

## FACTS

The record reflects that the victim of the sexual assault was Max's adopted daughter, A.M., who was born in 1987. Suspicion that A.M. was abused first arose when A.M.'s mother noticed that A.M. was infatuated with a book on child sexual abuse that the mother had read to her. A.M.'s mother also observed that A.M. was touching the area of her buttocks.

On August 17, 1990, A.M.'s mother took A.M. to the emergency room of the University of Nebraska Medical Center. A.M. was examined by Dr. Christy Hayes, and Dr. Hayes observed what she believed were genital warts at the exterior circumference of A.M.'s anus. Dr. Hayes' suspicion was confirmed by a biopsy performed by Dr. Richard Walker. Dr. Hayes notified the police, and A.M. was questioned by Officer Steven Henthorn.

Later on the same day, August 17, Officer Henthorn arrested Max, the defendant in this case. On August 22, pursuant to a court order, Max was examined by a dermatologist, Dr. Christopher Huerter, who diagnosed that Max's penis was infected by the same type of genital warts as those found at the opening of A.M.'s anus. Other male family members who had social contact with A.M. submitted to examination, and all tested negative for genital warts, as did A.M's mother.

Before trial, Max made a motion in limine to exclude the testimony of Officer Henthorn, who would testify to statements made by A.M. identifying Max as the individual who had touched the area of her buttocks. Max also made a motion in limine to exclude any testimony by Dr. Huerter to the effect that the pattern of warts around A.M.'s anus was consistent with the warts on the shaft of Max's penis. These motions were overruled.

The victim did not testify at trial. The victim's mother testified that she had never witnessed any abuse of A.M. by Max. However, she testified that she had found A.M. in her bed without underpants one morning. When she asked Max whether he knew why A.M. lacked underwear, Max responded that he did not.

Dr. Hayes testified that she had examined A.M. on August 17, 1990. Dr. Hayes testified that she asked A.M. whether anyone had been touching A.M. in a bad way, to which A.M.

responded, "My daddy touched me in the back," while pointing to the area of her buttocks. During examination of the victim's rectal area, Dr. Hayes found no indication of tearing, scratching, bruising, or other trauma. However, Dr. Hayes testified that she had observed four genital warts, of a type known as condyloma acuminatum, visible at the exterior of the victim's anus in a circular pattern, "at 3, 5, 7, [and] 9 o'clock."

Officer Henthorn testified that A.M. had told him that "on several occasions she had woke up in the middle of the night, found her daddy touching her bottom, and that her underwear was off." Defense counsel objected to this testimony as inadmissible hearsay, and the testimony was received with a limiting instruction to the jury.

Dr. Huerter testified that he had examined both Max and the victim and that he had observed the same type of genital warts on both. Dr. Huerter testified that, based on a reasonable degree of medical certainty, it was his opinion that the circular pattern of genital warts observable on the victim was consistent with the motion of a penis with warts randomly spread along its shaft. At the time of this testimony, Max renewed the objection he had made in limine to the lack of foundation for Dr. Huerter's opinion.

The jury found Max guilty of sexual assault of a child. The court determined that Max was not a mentally disordered sex offender and sentenced him to a correctional facility. Max has filed a timely appeal.

## ASSIGNMENTS OF ERROR

On appeal, Max assigns the following errors: (1) Max was denied due process of law because the amended information did not inform him, with reasonable certainty, of the charge against him so that he could prepare a defense; (2) the district court committed reversible error by allowing, over objection, Dr. Hayes and Officer Henthorn to testify about the details of the assault; (3) the expert testimony concerning why the circular pattern of warts was present on the victim was inadmissible because it was of no assistance to the trier of fact; and (4) the cumulated error was such as to deprive Max of his right to a fair trial.

## AMENDMENT OF INFORMATION

In his first assignment of error, Max claims the district court erred by allowing the State to amend the information 5 days before trial. The original information alleged that Max's acts of sexual assault occurred during the period from July 1 to August 31, 1990. Because the State could not prove when the specific acts took place, the State moved to amend the information to include the period from August 17, 1989, to August 17, 1990.

In *State v. Aldrich*, 226 Neb. 645, 413 N.W.2d 639 (1987), the Supreme Court stated, " '[T]he District Court, in its discretion, may permit a criminal information to be amended at any time before verdict or findings if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced.' " *Id.* at 646, 413 N.W.2d at 640 (quoting *State v. Gascoigen*, 191 Neb. 15, 213 N.W.2d 452 (1973)).

In the case at bar, Max has not shown that his substantial rights were prejudiced by amendment of the information. The defendant was sufficiently apprised by the original information as to the nature of the charges against him and the defense necessary to meet the charges. Max has not shown how the enlargement of time in the amended information altered the nature of the defense he was required to prepare. Accordingly, this assignment of error is without merit.

## DR. HAYES' TESTIMONY

In his second assignment of error, Max claims the court erred by allowing Dr. Hayes to testify to the victim's out-of-court statements identifying Max as the individual who had abused her.

Neb. Evid. R. 803(3), Neb. Rev. Stat. § 27-803(3) (Reissue 1989), admits the following as an exception to the hearsay rule: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

Recently, in *State v. Roenfeldt*, 241 Neb. 30, 486 N.W.2d 197 (1992), the Nebraska Supreme Court held that an out-of-court statement by a 10-year-old sexual abuse victim identifying her

mother's boyfriend as her abuser was properly admitted under the § 27-803(3) exception to the hearsay rule. In *Roenfeldt*, a physician testified that during a medical examination, the victim stated that her mother's boyfriend had tried to put " 'his thing' where she goes to the bathroom." *Id.* at 36, 486 N.W.2d at 202.

Except for the age of the victims, this case is factually similar to *Roenfeldt*. Therefore, we hold that the victim's out-of-court statements identifying Max as her abuser were properly admitted under rule 803(3), an exception to the hearsay rule. Accordingly, there was no error by the trial court.

### DR. HUERTER'S TESTIMONY

Max claims that the district court erred in allowing Dr. Huerter to express an opinion concerning the source of origin of the circular pattern of genital warts found at the circumference of the victim's anus.

Dr. Huerter testified the he had examined both the victim and Max and that he had concluded that both were infected with condyloma acuminata. He also stated that genital warts are usually transmitted by sexual contact. In his opinion, it was probable that the circular pattern of warts on the victim's anus was caused by the shaft of a penis infected with warts all along its length moving through the rim of the anus.

Max claims that Dr. Huerter's opinion testimony was speculative and would not be helpful to a jury. Max claims that expert testimony is "only admissible if it will be of assistance to the jury and relates to an area not within the competency of ordinary citizens." Brief for appellant at 13.

This assignment of error is governed by Neb. Evid. R. 702, Neb. Rev. Stat. § 27-702 (Reissue 1989): "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

There are four questions a court considers to determine the admissibility of expert testimony under rule 702: (1) Does the witness qualify as an expert pursuant to rule 702? (2) Is the

expert's testimony relevant? (3) Will the expert's testimony assist the trier of fact to understand the evidence or to determine a controverted factual issue? (4) Should the expert's testimony, even though relevant and admissible, be excluded in light of Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1989)? *State v. Chambers*, 241 Neb. 66, 486 N.W.2d 481 (1992); *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990).

In this case, it is clear that Dr. Huerter was qualified as an expert witness and that Dr. Huerter's testimony was relevant to determining whether the physical act of touching actually took place. The gist of Max's assignment of error is that Dr. Huerter's testimony would not be helpful to a jury and that the testimony ought to have been excluded.

The determination whether an expert's testimony or opinion will be helpful to a jury or assist the trier of fact in accordance with rule 702 involves the discretion of a trial court, whose ruling on admissibility of an expert's testimony or opinion will be upheld on appeal unless the trial court abused its discretion. *Reynolds, supra.*

*Reynolds* states a two-part test: (1) Is the expert's testimony an expression of how the trier of fact should decide a case or what result should be reached by the trier of fact on any issue to be resolved by the trier of fact? (2) Does the jury have all the evidence necessary to form its own conclusion concerning a disputed issue so that the expert's opinion is superfluous?

In *Reynolds*, the court stated that an expert's opinion is not helpful if it is "nothing more than an expression of how the trier of fact should decide a case or what result should be reached on any issue to be resolved by the trier of fact." *Id.* at 687-88, 457 N.W.2d at 421. *Reynolds* involved the homicide of a sheriff's deputy. Defendant Reynolds asserted that he did not kill Deputy Dodge with deliberate and premeditated malice and that he, thus, did not commit first degree murder. The support for this contention was the testimony of two psychiatrists that Reynolds did not deliberately and premeditatedly shoot the deputy because, according to the psychiatrists, Reynolds was impulsive and that he, therefore, did not deliberate or premeditate the act of shooting. The Supreme Court held that this evidence should have been excluded because it related to

factual existence of deliberation and premeditation as elements of first degree murder. In that posture, the psychiatric opinions were expressions that Reynolds was not guilty of the crime charged, murder in the first degree, and therefore, were unlikely to assist the jury in determining whether Reynolds acted with deliberation and premeditation in shooting Craig Dodge.

*Id.* at 689, 457 N.W.2d at 422.

Dr. Huerter's testimony was not an expression of how the trier of fact should decide the case, because Dr. Huerter refrained from expressing an opinion that the sexual contact was for the purpose of sexual arousal or gratification of either party, which would have been tantamount to telling the jury to resolve the case by convicting Max. Therefore, Dr. Huerter's testimony did not have the same characteristics as the excluded testimony in *Reynolds*. Instead, Dr. Huerter testified as to how genital warts are transmitted. Then, based upon that scientific background and the facts of the case, Dr. Huerter offered an opinion that the victim's genital warts were consistent with sexual contact. The task of connecting that opinion with the other evidence to find unlawful sexual contact was still for the jury. Accordingly, Dr. Huerter's testimony does not offend the first part of the *Reynolds* test.

*Reynolds* also held that

when an expert's opinion on a disputed issue [of fact] is a conclusion which may be deduced equally as well by the trier of fact with sufficient evidence on the issue, the expert's opinion is superfluous and does not assist the trier [of fact] in understanding the evidence or determining a factual issue.

*Id.* at 688-89, 457 N.W.2d at 421-22. Thus, the second part of the *Reynolds* test is whether the jury has all of the evidence necessary to form its own conclusion without the aid of the expert's opinion.

The disputed issues in this case are governed by the statute Max was charged under. Neb. Rev. Stat. § 28-318(5) (Reissue 1989) provides:

Sexual contact shall mean the intentional touching of the victim's sexual or intimate parts or the intentional

> touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts. . . . Sexual contact shall include only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party.

Therefore, the State had to prove both that Max touched his daughter and that the touching was for the purpose of sexual gratification. The jury, in turn, had to conclude whether sexual contact had occurred and, if so, whether it was for the purpose of sexual arousal or gratification.

Dr. Huerter testified that warts can be transmitted through hand contact, although in his opinion, the specific pattern of warts in this case was more consistent with sexual contact. Clearly, Dr. Huerter's description of the source of origin of the peculiar pattern of warts, as well as methods of transmission, would be helpful to the jury in deciding whether there was a touching and whether it was for sexual arousal or gratification. In the absence of Dr. Huerter's testimony, the jury did not have all of the evidence necessary to evaluate the significance of the presence of the genital warts on the victim and the accused, because Dr. Huerter provided evidence as to what the presence of genital warts could mean.

Finally, we must determine whether the probative value of the testimony was outweighed by its tendency for unfair prejudice. In this case, the testimony was directly relevant to an element of the State's case, namely, touching of the victim's intimate parts. Its probative value, therefore, was quite high.

Unfair prejudice is defined as a tendency to suggest a decision on an improper basis. *State v. Wilson*, 225 Neb. 466, 406 N.W.2d 123 (1987). Although Dr. Huerter's testimony suggested to the jury that penetration took place, the State only had to prove that Max touched an intimate part of the victim's body for the purpose of sexual gratification. Dr. Huerter's testimony, if believed, would establish a fact the State was not required to prove, penetration, but the testimony did not suggest a decision on an improper basis.

We conclude that it was not an abuse of discretion for the trial court to allow Dr. Huerter to express an opinion on the origin of the pattern of warts.

## OFFICER HENTHORN'S TESTIMONY

Max also argues that the trial court erred by allowing Officer Henthorn to testify to out-of-court statements made by A.M. to the effect that on several occasions, she had awoken at night and had found Max touching her bottom. The court received the testimony, but instructed the jury that

> [Officer Henthorn's testimony] is not received for the truth of the matter asserted in the statement, rather it is received simply as the officer's explanation for his next course of activity. So that when you hear this evidence, you may not consider it in evidence as proof of any of the elements of this crime charged.

Although this court is aware that somewhat similar testimony by a police officer can be admissible depending on the facts of the case and the trial record, in this case the testimony of Officer Henthorn is not within any of the hearsay exceptions. See *State v. Jury*, 1 NCA 1504 (1992). The trial court should have excluded Officer Henthorn's testimony under rule 403.

## HARMLESS ERROR

Even if the trial court erred, this court must affirm the conviction if the error is harmless. Neb. Rev. Stat. § 29-2308 (Supp. 1991) reads in pertinent part:

> No judgment shall be set aside, new trial granted, or judgment rendered in any criminal case on the grounds of misdirection of the jury or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure if the appellate court, after an examination of the entire cause, considers that no substantial miscarriage of justice has actually occurred.

Similarly, Neb. Evid. R. 103(1), Neb. Rev. Stat. § 27-103(1) (Reissue 1989), provides: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected."

Harmless error exists in a jury trial of a criminal case when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in a verdict adverse to a substantial right of the defendant. *State*

*v. Stahl*, 240 Neb. 501, 482 N.W.2d 829 (1992).

In *State v. Christian*, 237 Neb. 294, 299, 465 N.W.2d 756, 759-60 (1991), the court said: "[A] court may affirm [a] judgment if, after consideration of the record, the court finds that the admission of the evidence in question was harmless beyond a reasonable doubt."

The testimony of Officer Henthorn is cumulative to that of Dr. Hayes. Both witnesses testified that A.M. told them that Max had touched her bottom. In *State v. Coleman* 239 Neb. 800, 478 N.W.2d 349 (1992), the Supreme Court stated, " 'Cumulative evidence' means 'tending to prove the same point to which other evidence has been offered.' " *Id*. at 814, 478 N.W.2d at 358 (quoting Webster's Third New International Dictionary, Unabridged 553 (1981)).

" 'Erroneous admission of evidence is harmless error and does not require reversal if the evidence erroneously admitted is cumulative and other relevant evidence, properly admitted, or admitted without objection, supports the finding by the trier of fact.' " *Coleman*, 239 Neb. at 814-15, 478 N.W.2d at 358 (quoting *State v. Cox*, 231 Neb. 495, 437 N.W.2d 134 (1989)).

The testimony of Dr. Hayes was properly admitted. The testimony of Officer Henthorn was cumulative to that of Dr. Hayes. The record contains sufficient evidence for the trier of fact to find Max guilty. Therefore, admission of Officer Henthorn's testimony is harmless error.

The judgment of the district court is affirmed.

AFFIRMED.