STATE OF NEBRASKA, APPELLEE, V.
LIONEL C. BEEDER, APPELLANT.
707 N.W.2d 790

Filed January 6, 2006.   Nos. S-03-1205, S-04-1115.

Peter K. Blakeslee, and, on brief, James R. Mowbray, Jeffery A. Pickens, and Kelly S. Breen, of Nebraska Commission on Public Advocacy, for appellant.

Jon Bruning, Attorney General, and Kevin J. Slimp for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

A jury convicted appellant, Lionel C. Beeder, of third degree assault, witness tampering, and first degree false imprisonment. The district court enhanced the last two convictions under the habitual criminal statute. We determine that the court erred by not declaring a mistrial for prosecutorial misconduct during the prosecutor's closing argument, and we reverse Beeder's convictions and remand the cause for a new trial.

## BACKGROUND

The State charged Beeder with third degree assault on his ex-wife, Deidre Beeder; first degree false imprisonment of Deidre; making terroristic threats to both Deidre and Doris Allington; tampering with a witness, Allington; and being a habitual criminal. He pleaded not guilty to all charges.

Beeder and Deidre are divorced, but have intermittently reconciled. On June 2, 2002, the two, along with their son, were living with Beeder's mother. Deidre testified that sometime after noon, Beeder called her back to a bedroom and hit her. After hitting her, Beeder started arguing with the son in the bedroom across the hall. While Beeder was arguing with the son, Deidre called the 911 emergency dispatch service.

Allington, a friend of Beeder's mother, visited that day. She testified that she observed bruises on Deidre's arm and offered to take her to get help. Allington also heard Beeder call Deidre into the bedroom and tell her repeatedly to "get in that bed." Allington followed Deidre "to make sure nothing was going to happen." Beeder then came out of the bedroom and told Allington that she should mind her own business and that Deidre "had too many black and blue marks" to go to the hospital.

While Beeder and Deidre were in the bedroom, the 911 dispatch operator called back and Beeder's mother told the operator there was no problem. Beeder's mother then told Beeder that Deidre had called the police. A few minutes later, police officers arrived at the house in response to the 911 emergency call. Beeder's mother answered the door and told them nothing was wrong. When the officers were at the door, Deidre screamed "help" from the bedroom. The officers followed the direction of the scream and found Deidre. They helped her into the living room, but she became combative, rejecting their assistance.

The responding officers testified that the scene at the house was "chaotic." Deidre argued with the officers until an emergency unit took her to the hospital. After calming her down, hospital staff photographed her bruises. The photographs show that she had large bruises on her arms, legs, and back.

Allington testified that about a month later, Beeder called her on the telephone and told her, " 'Anybody who testifies in [Deidre's] behalf will be going down, and that means the county

attorney, the sheriff's department, or the police department.'"
Allington asked if that included her, and Beeder repeated the
same statement. Allington stated that she took this statement as
a threat to her.

The jury acquitted Beeder on the charge of terroristic threats
to Allington and convicted him of third degree assault, first
degree false imprisonment, and witness tampering. Before sen-
tencing, Beeder filed a motion challenging the constitutionality
of the habitual offender statute. The trial court overruled that
motion and found sufficient evidence that Beeder had at least
two prior valid convictions, and thus, the court sentenced him as
a habitual criminal. With the enhancements, he was sentenced
to concurrent prison terms of 1 year for the third degree assault
conviction and from 10 to 15 years each for both the false
imprisonment and the witness tampering convictions. He was
given 123 days' credit for time served.

## ASSIGNMENTS OF ERROR

Beeder assigns, rephrased, that the trial court erred by (1)
overruling Beeder's motions for mistrial based on prosecutor-
ial misconduct, (2) receiving inadmissible hearsay testimony,
(3) not defining in its jury instructions all of the essential ele-
ments of the crime of first degree false imprisonment, and (4)
not directing a verdict of acquittal on the habitual criminal
charge and not ruling that Neb. Rev. Stat. § 29-2221 (Reissue
1995) is unconstitutional. Beeder also assigns numerous other
errors that need not be addressed in light of our decision.

## STANDARD OF REVIEW

■ The decision whether to grant a motion for mistrial is
within the discretion of the trial court and will be upheld on
appeal absent an abuse of discretion. See, *State v. Haltom*, 264
Neb. 976, 653 N.W.2d 232 (2002); *State v. Harris*, 263 Neb. 331,
640 N.W.2d 24 (2002).

## ANALYSIS

### PROSECUTORIAL MISCONDUCT

Beeder contends that the trial court erred by not granting his
motion for mistrial because of the prosecutor's misconduct.

Defense counsel made two specific motions for mistrial based on prosecutorial misconduct. We deal only with the second, made at the end of closing arguments. During closing arguments, Beeder's counsel twice stated, "I'm not going to argue Count I to you, the assault. You can make a determination from the evidence in the case on Count I. The prosecutor didn't bother arguing it either."

On rebuttal, the prosecutor referred to the defense's statement, characterizing the assault charge as *"the third degree assault that is so absolutely clear that [the defense does not] even have to put on a defense to it [and] admits third degree assault happened."* (Emphasis supplied.) The defense objected to the prosecutor's statement as mischaracterizing his argument and asked the court to instruct the jurors to disregard the statement. The court sustained the objection and said the "jurors will make up their mind[s] on the guilt or innocence. Any representations by Counsel, no matter how construed, are not binding on you, and you should disregard Counsel's statement regarding their representations."

Immediately after the judge's admonition, the prosecutor said, *"I recall [defense counsel's] saying in his closing argument to you that the evidence is clear enough on that that he's not even putting on a defense."* (Emphasis supplied.) Defense counsel again objected, and the court sustained the objection, this time directly telling the jury to disregard the prosecutor's "last comment." The prosecutor finished her closing argument, and the defense moved for a mistrial, arguing that the prosecutor had behaved inappropriately throughout the trial and particularly throughout closing argument. See *State v. Jacob*, 253 Neb. 950, 574 N.W.2d 117 (1998) (finding that objection at end of closing arguments sufficiently preserves for appeal opponent's misconduct during closing arguments). The motion was overruled.

A mistrial is generally granted when a fundamental failure prevents a fair trial. See *State v. Pierce*, 231 Neb. 966, 439 N.W.2d 435 (1989). Some examples are an egregiously prejudicial statement by counsel, the improper admission of prejudicial evidence, or the introduction of incompetent matters to the jury. See *id.*

■ However, before it is necessary to grant a mistrial for prosecutorial misconduct, the defendant must show that a substantial miscarriage of justice has actually occurred. *State v. Harris, supra.* Whether a prosecutor's inflammatory remarks are sufficiently prejudicial to constitute error must be determined upon the facts of each particular case. See *State v. Thomas,* 262 Neb. 985, 637 N.W.2d 632 (2002).

■ But when a prosecutor persists after the court advises that an action is not permitted, the prosecutor commits misconduct. See *State v. Lotter,* 255 Neb. 456, 586 N.W.2d 591 (1998) (repeating improper question even though court sustained defendant's objection). Here, not once, but twice, the prosecutor said that Beeder's counsel agreed that the evidence clearly showed he was guilty of third degree assault. Although the court sustained Beeder's objection, its admonition to the jury did not reprimand the prosecutor; instead, the court told the jurors they could make up their own minds. This emboldened the prosecutor, who repeated the misrepresentation.

■ Nevertheless, the State argues that the court's admonition and jury instructions sufficiently cured any prejudicial effect. But when a prosecutor's misconduct is so inflammatory that no admonition will remove the contamination, a mistrial is warranted. See *State v. Pierce, supra.* In other words, a mistrial is appropriate when " ' " 'after the thrust of the saber it is difficult to say forget the wound' . . . ." ' " See *id.* at 977, 439 N.W.2d at 443 (quoting *Dunn v. United States,* 307 F.2d 883 (5th Cir. 1962)).

We cannot ignore the wound inflicted by the prosecutor's misconduct. The prosecutor's repeated misrepresentation misled the jury, leaving the false impression that Beeder admitted he was guilty of third degree assault. Having made the statement on rebuttal, Beeder's counsel had to sit silently without an opportunity to correct that impression. Further, the trial court's admonition left the jurors to ponder why they were free to make up their minds about the first statement, but not the second.

By repeatedly misrepresenting Beeder's argument, the prosecution signaled to the jury that Beeder's own lawyers believed him guilty, eroding their credibility with the jury and compromising Beeder's defense on all charges. As was stated in *Berger*

*v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 79 L. Ed. 1314 (1935):

> He [the prosecutor] may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

The prosecutor's misrepresentations struck a foul blow. " 'If we treat violations indulgently, we shall soon — in the words of [Alexander] Pope — "first endure, then pity, then embrace." ' " *Pierce v. State*, 173 Neb. 319, 330, 113 N.W.2d 333, 341 (1962). See, also, *State v. Golter*, 216 Neb. 36, 342 N.W.2d 650 (1983). The trial court abused its discretion by overruling Beeder's motion for mistrial.

## NEW TRIAL

Upon finding error in a criminal trial, the reviewing court must determine whether the evidence offered by the State and admitted by the trial court, whether erroneously or not, would have been sufficient to sustain the conviction before the cause is remanded for a new trial. See *State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000). See, also, *State v. Allen*, 269 Neb. 69, 690 N.W.2d 582 (2005). Although the Double Jeopardy Clauses of the federal and state Constitutions do not protect against a second prosecution for the same offense where a conviction is reversed for trial error, they bar retrial if the reversal is necessitated because the evidence was legally insufficient to sustain the conviction. *State v. Mata*, 266 Neb. 668, 668 N.W.2d 448 (2003). We conclude that Beeder can be retried without violating double jeopardy because the evidence admitted was sufficient to sustain his convictions. Because some of the remaining assignments of error are likely to recur during retrial, we address those issues.

## HEARSAY TESTIMONY

While at the hospital, Dr. Gary Settje, Deidre's family practitioner, interviewed her. He testified that he "asked her if she had been struck by [Beeder], and she nodded her head yes." Defense

counsel objected both before this testimony was elicited and after, but the trial court overruled the objections. Beeder argues that Settje's recitation should be excluded as hearsay testimony not made for the purpose of medical diagnosis or treatment.

Before Settje's recitation, he testified that when treating or diagnosing bruises, it is necessary to determine the mechanism of injury—how the injury occurred—because "different types of injury will have other impacts on the patient that affect things that affect the patient's care. . . . So you have to know the mechanism to make a determination of what to look for and how deep to look in order to proceed." Later, as part of the prosecution's offer of proof, Settje testified that in reference to who had caused the injury, "it wasn't really necessary [to Deidre's treatment] to know who it was."

■ Neb. Rev. Stat. § 27-803 (Cum. Supp. 2004) provides in pertinent part:

> Subject to the provisions of section 27-403, the following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (3) Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment[.]

This rule is " 'bottomed on the notion that a person seeking medical attention will give a truthful account of the history and current status of his condition in order to ensure proper treatment.' " *State v. Hardin*, 212 Neb. 774, 781, 326 N.W.2d 38, 42 (1982).

We addressed a similar situation in *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994). There, the emergency room doctor asked a victim of domestic violence " 'how the altercation occurred.' " *Id.* at 395, 513 N.W.2d at 324. He then relayed the victim's response: " ' "I don't know. I don't know. It's been awhile. I don't know. It feels just like it is bruised. It's not broken. My left breast hurts a lot — a lot. My right arm hurts." ' " *Id.* at 396, 513 N.W.2d 324. We said that the doctor's testimony "relate[d] more to fault than to what would be considered 'reasonably pertinent to diagnosis or treatment,' " but found that

because the testimony was inconclusive and did not assign fault, any error was harmless. *Id.* By contrast, Settje's question referred directly to the individual responsible and invited a conclusive response.

The State, however, points us to *State v. Max*, 1 Neb. App. 257, 492 N.W.2d 887 (1992), which it argues allows a " 'victim's out-of-court statements identifying [the defendant] as the individual who had abused her.' " Brief for appellee at 9. In *Max*, the Nebraska Court of Appeals relied on *State v. Roenfeldt*, 241 Neb. 30, 486 N.W.2d 197 (1992). Both *Max* and *Roenfeldt* dealt with the sexual abuse of children by a father figure. When a child is sexually abused, and especially when the child has a familial relationship with the child's abuser, the identity of the perpetrator is reasonably pertinent to diagnosis and treatment because the victim cannot be effectively treated if sent right back into the abuser's clutches. *Max* and *Roenfeldt* are inapposite.

Because the State provided no reason why the defendant's identity would be reasonably pertinent to Deidre's diagnosis and treatment and because Settje suggested that it was not, we conclude that Settje's recitation contained inadmissible hearsay. If this testimony is introduced on retrial, it should be excluded as hearsay, not within an exception, unless the defendant's identity is redacted or the State demonstrates that the defendant's identity is reasonably pertinent to Deidre's diagnosis and treatment.

### JURY INSTRUCTIONS

Beeder also argued that the jury instructions regarding first degree false imprisonment failed to state all of the essential elements of the crime because they omitted part of the statutory definition of restraint. The instructions given provided:

> **The elements of False Imprisonment First Degree are:**
>
> 1. That the defendant Lionel C. Beeder restrained Deidre Beeder.
>
> 2. That the defendant did so knowingly.
>
> 3. That the defendant did so under terrorizing circumstances or under circumstances which exposed her to the risk of serious bodily injury.

4. That the defendant did so on or about June 2, 2002, in Hall County, Nebraska.

**OR**

**The elements of False Imprisonment Second Degree are:**

1. That the defendant Lionel C. Beeder restrained Deidre Beeder without legal authority.

2. That the defendant did so knowingly.

3. That the defendant did so on or about June 2, 2002, in Hall County, Nebraska.

A definitions instruction was later given, which stated, "**Restrain** means to restrict a person's movement in such a manner as to interfere substantially with his liberty."

Neb. Rev. Stat. §§ 28-314 (Cum. Supp. 2004) and 28-315 (Reissue 1995) provide the elements of first and second degree false imprisonment. The jury instructions given generally comport with the basic statutory elements. But Neb. Rev. Stat. § 28-312 (Reissue 1995) defines restraint in the false imprisonment statutes. It provides:

(1) Restrain shall mean to restrict a person's movement in such a manner as to interfere substantially with his liberty:

(a) By means of force, threat, or deception; or

(b) If the person is under the age of eighteen or incompetent, without the consent of the relative, person, or institution having lawful custody of him[.]

Neither subsection was included in the trial court's instruction defining restraint.

Here, Deidre is well over the age of 18 and no evidence of incompetence was presented, so it was proper for the trial court to exclude § 28-312(1)(b) from the instructions. However, § 28-312(1)(a) describes the means by which the restriction must be carried out and limits the behavior that is made criminal under this statute.

Because the Legislature has made restraint a legal term of art, the court should instruct the jury, on retrial, using the applicable subsection from the restraint definition in § 28-312. See *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994), *overruled on other grounds, State v. Burlison*, 255 Neb. 190, 583 N.W.2d 31 (1998).

CONSTITUTIONALITY OF HABITUAL CRIMINAL STATUTE

Beeder also argues that the trial court erred by not directing a verdict of acquittal on the habitual criminal charge and invites us to overrule *State v. Hurbenca*, 266 Neb. 853, 669 N.W.2d 668 (2003). We decline his invitation.

## CONCLUSION

We conclude that the trial court abused its discretion by overruling Beeder's second motion for mistrial. We thus reverse Beeder's convictions and remand the cause for new trial.

REVERSED AND REMANDED.