the statements of the confidential informant, and instructing the jury. And the court did not abuse its discretion in limiting the scope of his cross-examination of Herrera-Gutierrez, overruling his motion for new trial, and denying his request to reopen the evidence. Further, Stricklin failed to preserve his claim of prosecutorial misconduct for appellate review. We affirm Stricklin's convictions and sentences.

AFFIRMED.

HEAVICAN, C.J., not participating.

———————————

STATE OF NEBRASKA, APPELLEE, V. TERRELL E. NEWMAN, ALSO KNOWN AS MONROE E. TERRELL, ALSO KNOWN AS EDWARD N. TERRELL, APPELLANT.

___ N.W.2d ___

Filed April 3, 2015.    No. S-14-229.

1. **Identification Procedures: Due Process: Appeal and Error.** A district court's conclusion whether an identification is consistent with due process is reviewed de novo, but the court's findings of historical fact are reviewed for clear error.

2. **Evidence: Appeal and Error.** In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

3. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

4. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

5. **Motions for Mistrial: Appeal and Error.** Whether to grant a mistrial is within the trial court's discretion, and an appellate court will not disturb its ruling unless the court abused its discretion.

6. **Constitutional Law: Identification Procedures: Due Process.** The Due Process Clause does not require a preliminary judicial inquiry into the reliability of an

eyewitness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement.

7. **Trial: Identification Procedures.** When no improper law enforcement activity is involved, it suffices to test the reliability of identification testimony at trial, through the rights and opportunities generally designed for that purpose, such as the rights to counsel, compulsory process, and confrontation and cross-examination of witnesses.

8. **Effectiveness of Counsel: Proof: Appeal and Error.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. An appellate court may address the two prongs of this test, deficient performance and prejudice, in either order.

9. **Effectiveness of Counsel: Proof.** To show prejudice on a claim of ineffective assistance of counsel, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

10. **Effectiveness of Counsel: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred.

11. **Effectiveness of Counsel: Records: Appeal and Error.** The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.

12. **Trial: Effectiveness of Counsel: Evidence: Appeal and Error.** An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.

13. **Trial: Evidence: Appeal and Error.** An objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on any other ground.

14. **Trial: Rules of Evidence.** A trial court is required to weigh the danger of unfair prejudice against the probative value of the evidence only when requested to do so at trial.

15. **Motions for Mistrial.** A mistrial is generally granted when a fundamental failure prevents a fair trial. Some examples are an egregiously prejudicial statement by counsel, the improper admission of prejudicial evidence, or the introduction of incompetent matters to the jury.

Appeal from the District Court for Douglas County: SHELLY R. STRATMAN, Judge. Affirmed.

Michael J. Wilson, of Schaefer Shapiro, L.L.P., for appellant.

Jon Bruning, Attorney General, and Stacy M. Foust for appellee.

Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ., and Moore, Chief Judge.

Cassel, J.

## I. INTRODUCTION

This case is Terrell E. Newman's direct appeal from multiple felony convictions, including two convictions for first degree murder. Newman's convictions arose from the shooting deaths of Carlos Morales and Bernardo Noriega during a planned drug transaction. The State alleged that Newman committed the crimes with an accomplice, Derrick U. Stricklin, and the two were tried together. Newman's assignments of error relate to his identification by the State's primary witness, the sufficiency of the evidence, ineffective assistance of trial counsel, the admissibility of evidence based upon cell phone records, comments made by a prospective juror, the exclusion of statements made by a confidential informant, the scope of his cross-examination of the State's primary witness, and juror misconduct. Finding no merit to his claims, we affirm his convictions and sentences.

## II. BACKGROUND

We address Newman's and Stricklin's appeals in separate opinions. The basic facts of this case are contained in *State v. Stricklin*[1] and are not repeated herein, except as otherwise indicated.

As previously noted, the deaths of Morales and Noriega occurred during a planned drug transaction. One of the victims, Jose Herrera-Gutierrez, was not killed and identified Newman and Stricklin as Morales' and Noriega's killers. At trial, Herrera-Gutierrez was the State's primary witness. He testified that Morales had asked him to obtain some cocaine and that he and Noriega were supposed to deliver the cocaine

---

[1] *State v. Stricklin, ante* p. 542, ___ N.W.2d ___ (2015).

to Morales' automobile body shop. When they arrived at the shop, they entered the shop's office to find two black males already present. The males ordered Herrera-Gutierrez, Morales, and Noriega to lie down. They subsequently shot and killed Morales and Noriega.

Newman was convicted of two counts of first degree murder, three counts of use of a deadly weapon to commit a felony, attempted intentional manslaughter, and possession of a deadly weapon by a prohibited person. He was sentenced to life imprisonment for each of the first degree murder convictions, 15 to 25 years' imprisonment for each of the three use of a deadly weapon convictions, 20 months' to 5 years' imprisonment for the attempted intentional manslaughter conviction, and 15 to 25 years' imprisonment for the possession of a deadly weapon by a prohibited person conviction. Each sentence was ordered to run consecutively.

Newman filed a timely notice of appeal—an appeal which is taken directly to this court.[2]

## III. ASSIGNMENTS OF ERROR

Newman assigns, reordered and restated, that (1) the police employed unnecessary and unduly suggestive photographic lineups in order to identify him; (2) the State introduced insufficient evidence to support his convictions; and (3) his trial counsel failed to introduce the affidavit or testimony of a juror's brother regarding Newman's allegations of juror misconduct, to object to jury instructions Nos. 5, 11, and 12, and to adequately investigate his defenses.

Newman further assigns that the district court erred in (1) admitting exhibit 288 into evidence, (2) overruling his motion for mistrial due to comments made by a prospective juror, (3) excluding the statements of a confidential informant, (4) limiting the scope of his cross-examination of Herrera-Gutierrez, (5) overruling his motion for a new trial due to juror misconduct, and (6) overruling his motion to withdraw his rest and to reopen the evidence.

---

[2] See Neb. Rev. Stat. § 24-1106(1) (Reissue 2008).

## IV. STANDARD OF REVIEW

[1] A district court's conclusion whether an identification is consistent with due process is reviewed de novo, but the court's findings of historical fact are reviewed for clear error.[3]

[2] In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4]

[3,4] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.[5] Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.[6]

[5] Whether to grant a mistrial is within the trial court's discretion, and an appellate court will not disturb its ruling unless the court abused its discretion.[7]

## V. ANALYSIS

Newman and Stricklin assign several of the same issues as error. And as to these issues, there is no material difference in the applicable facts or law in the two appeals. Thus, we will refer to our opinion in *Stricklin*[8] for the disposition of their common claims. This opinion addresses only those assignments

---

[3] *State v. Nolan*, 283 Neb. 50, 807 N.W.2d 520 (2012).

[4] *State v. Wiedeman*, 286 Neb. 193, 835 N.W.2d 698 (2013).

[5] *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013).

[6] *Id*.

[7] *State v. Watson*, 285 Neb. 497, 827 N.W.2d 507 (2013).

[8] *Stricklin, supra* note 1.

of error unique to Newman. We begin with Newman's identification through the use of photographic lineups.

## 1. Identification

Newman assigns that the police employed unnecessary and unduly suggestive photographic lineups in order to identify him. He contends that the photographic lineups violated his due process rights, because a photograph of him was included in multiple lineups. He further argues that the police should have conducted a live, physical lineup.

The State argues that the photographic lineups were not unduly suggestive and did not violate Newman's due process rights. Moreover, the State points out that Herrera-Gutierrez had previously seen Newman and Stricklin at Morales' shop. Herrera-Gutierrez did not know their names. But the shootings were not his first exposure to the perpetrators. Thus, the witness began the identification process with more familiarity with the shooters than a mere eyewitness. We analyze the procedures in that light.

### (a) Facts

Herrera-Gutierrez identified both Newman and Stricklin as the shooters in photographic lineups conducted by police. Prior to trial, Newman moved to suppress any in-court identification of him by persons who had identified him in a police lineup. The district court held a hearing, and multiple officers testified as to the circumstances of the lineups.

Det. Dave Schneider testified that he interviewed Herrera-Gutierrez 2 days after the shootings and that, at that time, he had not developed any suspects. During the interview, Herrera-Gutierrez informed Schneider that he had recognized the shooters from prior occasions at Morales' shop. He explained that one of the shooters had a brother who was potentially a business partner of Morales' and that the other shooter was associated with a green Volkswagen Beetle that Herrera-Gutierrez had seen at the shop. Through investigating vehicles matching that description, Schneider developed Newman as a suspect.

Several weeks after the initial interview with Herrera-Gutierrez, Schneider and another detective showed

Herrera-Gutierrez a photographic lineup containing a photograph of Newman. Schneider had created the lineup using the police department's "mugshot program," and he had placed Newman's photograph in "[p]osition number three." The photograph of Newman was from 1999, and it was almost 12 years old. Schneider had a more recent photograph of Newman from Newman's "Nebraska ID card," but Schneider used the 1999 photograph because it was the only photograph of Newman available in the mug shot program. He also printed the lineup in black and white, because the 1999 photograph was "distorted" in comparison to the other five photographs. But the distortion was less noticeable in black and white.

Herrera-Gutierrez was presented with the lineup, and he indicated that the photograph of Newman resembled one of the shooters. The presentation of the lineup was recorded, and the recording was received by the district court. After Herrera-Gutierrez had indicated the photograph of Newman, the other detective translated that "number three looks a lot like him, but he can't assure you that that's him." When asked to give a percentage, the detective translated that Herrera-Gutierrez was "about 50 percent," but not sure, because "he looks a little heavier." Additionally, according to the detective, Herrera-Gutierrez explained that he believed he might be able to make an identification from a more recent photograph.

On the following day, a second lineup was presented to Herrera-Gutierrez by Schneider and two other detectives. Schneider had obtained a more recent photograph of Newman using "DMV photos," and the photographs appearing in the second lineup were in color. Schneider confirmed that Newman was the only individual to appear in both lineups.

After the presentation of the second lineup, Herrera-Gutierrez identified Newman. Schneider described that Herrera-Gutierrez did not hesitate "at all." And one of the other detectives testified that "within two seconds," Herrera-Gutierrez identified Newman and indicated that Newman was "the fat one that he was talking about in the garage that was orchestrating the homicide[s]."

After the hearing, the district court entered an order over-ruling Newman's motion to suppress. The court concluded that the identification process used by police was not unduly sug-gestive and that there had been no improper police influence. The court observed that Herrera-Gutierrez was able to describe prior instances when he had seen the shooters and that he had provided physical descriptions of the shooters prior to being presented with any lineups.

### (b) Resolution

The U.S. Supreme Court has stated a two-part test for determining the admissibility of an out-of-court identification: "First, the trial court must decide whether the police used an unnecessarily suggestive identification procedure. . . . If they did, the court must next consider whether the improper iden-tification procedure so tainted the resulting identification as to render it unreliable and therefore inadmissible."[9]

[6,7] "[T]he Due Process Clause does not require a pre-liminary judicial inquiry into the reliability of an eyewit-ness identification when the identification was not procured under unnecessarily suggestive circumstances arranged by law enforcement."[10] When no improper law enforcement activity is involved, it suffices to test the reliability of identification testimony at trial, through the rights and opportunities gener-ally designed for that purpose, such as the rights to counsel, compulsory process, and confrontation and cross-examination of witnesses.[11]

We have previously stated that a determination of imper-missible suggestiveness is based on the totality of the circum-stances.[12] Based upon the totality of the circumstances sur-rounding the lineups in this case, we find no unnecessary suggestiveness in the procedures used by police to iden-tify Newman.

---

[9] *Perry v. New Hampshire*, ___ U.S. ___, 132 S. Ct. 716, 722, 181 L. Ed. 2d 694 (2012). See *Nolan, supra* note 3.

[10] *Perry, supra* note 9, 132 S. Ct. at 730. See *Nolan, supra* note 3.

[11] *Nolan, supra* note 3.

[12] See *State v. Taylor*, 287 Neb. 386, 842 N.W.2d 771 (2014).

Before being presented with both of the photographic line-ups, Herrera-Gutierrez was admonished that the lineups may or may not have contained a photograph of one of the perpetrators. And an examination of the photographs in each of the lineups reveals that the arrays were not suggestive. Each of the lineups contained photographs of individuals with characteristics similar to Newman's. And Newman's photographs did not stand out due to age or any apparent distortion.

Newman's arguments as to unnecessary suggestiveness focus on his inclusion in multiple photographic lineups. And he attempts to compare this case to *Foster v. California*,[13] in which the U.S. Supreme Court determined that a petitioner's due process rights were violated by his identification through multiple lineups in a robbery investigation. In *Foster*, the petitioner was placed in an initial lineup in which he stood out by the contrast of his height and by the fact that he was wearing a leather jacket similar to the one worn by the robber. And when the witness was unable to identify the petitioner, the police permitted a one-to-one confrontation between the petitioner and the witness—a practice which, according to the Court, has been widely condemned. After a tentative identification, the police again placed the petitioner in another lineup. Thus, "[i]n effect, the police repeatedly said to the witness, 'This is the man.'"[14]

We do not find *Foster* to be analogous to the present case. Although Newman was included in two lineups, the similarities to *Foster* end there. Further, in this case, the use of multiple lineups was prompted by Herrera-Gutierrez' statement that he might be able to make an identification of Newman from a more recent photograph.

After reviewing the first lineup, Herrera-Gutierrez indicated that the photograph of Newman resembled one of the shooters, but stated that he was not sure, because the individual in the photograph appeared to be heavier. And he further explained that he might be able to make an identification from

---

[13] *Foster v. California*, 394 U.S. 440, 89 S. Ct. 1127, 22 L. Ed. 2d 402 (1969).

[14] *Id.*, 394 U.S. at 443 (emphasis omitted).

a more recent photograph. Schneider subsequently obtained a more recent photograph of Newman and compiled a second lineup, from which Herrera-Gutierrez identified Newman without hesitation.

The U.S. Supreme Court has emphasized that each challenge to a pretrial identification must be considered on its own facts.[15] Considering the facts of the present case, we do not conclude that the procedures used by police effectively told Herrera-Gutierrez, "'This is the man.'"[16] Although Newman appeared in both lineups, the second lineup was created to address Herrera-Gutierrez' concerns with the 1999 photograph. And in the second lineup, police used a different photograph of Newman and placed the photograph in a different position.

Under some circumstances, the inclusion of the same suspect in multiple photographic lineups in order to obtain an identification might be unnecessarily suggestive. But this determination must be made on a case-by-case basis. Under the facts of the present case, we find no unnecessary suggestiveness in the procedures used by police.

Additionally, Newman asserts that the procedures used to identify him were unnecessarily suggestive, because Schneider prepared both of the photographic lineups and was present when they were presented to Herrera-Gutierrez. And he cites a policy of the Omaha Police Department that a photographic lineup should not be presented by the person who prepared it.

Notwithstanding any police policy regarding the presentation of photographic lineups, the evidence received at the hearing established that Herrera-Gutierrez' identification of Newman was not tainted by Schneider's presence. The recording of the first lineup does not reveal any attempt by Schneider to influence Herrera-Gutierrez in making an identification. And Schneider testified that the second lineup was presented by another detective and that both he and the other detective did not point to any of the photographs to indicate Newman's

---

[15] See *Simmons v. United States*, 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968).

[16] *Foster, supra* note 13, 394 U.S. at 443 (emphasis omitted).

photograph. The other detective also testified that he pre-sented the second lineup and that he did not know who was in the lineup.

Finally, Newman contends that police should have used a live, physical lineup in order to identify him, rather than photo-graphic lineups. However, he cites no statute or case law requir-ing the use of live, physical lineups. And the U.S. Supreme Court has expressly declined to espouse such a requirement.[17] This assignment of error is without merit.

## 2. INSUFFICIENT EVIDENCE

Newman claims that the evidence introduced at trial was so insufficient that no rational trier of fact could have found that the State had satisfied its burden of proving the defendants' guilt beyond a reasonable doubt. He argues that Herrera-Gutierrez' testimony as to the events of the shootings was not credible and was uncorroborated by forensic or circumstan-tial evidence.

Newman's arguments invite us to exceed the scope of our appellate review. We decline to do so. We have repeatedly stated that an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.[18] From the jury's verdicts, it is apparent that the jury found Herrera-Gutierrez to be credible. It is not the province of this court to question that determination. This assignment of error is with-out merit.

## 3. INEFFECTIVE ASSISTANCE
## OF TRIAL COUNSEL

Newman assigns that his trial counsel was ineffective in several ways. He claims that his trial counsel was ineffective in (1) failing to introduce the affidavit or testimony of a juror's brother regarding Newman's allegations of juror misconduct; (2) failing to object to jury instructions Nos. 5, 11, and 12; and (3) failing to adequately investigate his defenses.

---

[17] See *Simmons, supra* note 15.

[18] See, e.g., *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

[8,9] The test for ineffective assistance of counsel is well settled. To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[19] the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense.[20] An appellate court may address the two prongs of this test, deficient performance and prejudice, in either order.[21] To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[22]

[10] Newman obtained new, different counsel for this direct appeal. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred.[23]

[11,12] However, the fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved. The determining factor is whether the record is sufficient to adequately review the question.[24] An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.[25]

### (a) Affidavit or Testimony of Juror's Brother

The relevant facts surrounding Newman's allegations of juror misconduct are contained in *Stricklin*.[26] Briefly summarized, Newman moved for a new trial on the basis that a

---

[19] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[20] *Filholm, supra* note 18.

[21] *Id*.

[22] *Id*.

[23] *State v. Ramirez*, 284 Neb. 697, 823 N.W.2d 193 (2012).

[24] *Filholm, supra* note 18.

[25] *Ramirez, supra* note 23.

[26] *Stricklin, supra* note 1.

juror committed misconduct in communicating with the juror's brother, a nonjuror, after the first day of deliberations and before a verdict had been reached. A hearing was conducted, and the juror testified that he called his brother and that his brother informed him that their father had known the defendants from growing up together. But the juror testified that he did not know either of the defendants personally.

Although the juror's brother was known to the defendants, neither Newman nor Stricklin produced the statements of the brother at the hearing. After the hearing, Newman moved to withdraw his rest and to introduce the brother's affidavit, but the district court overruled the motion.

The record is insufficient to resolve this ineffective assistance claim. Newman claims that the brother's affidavit provided "critical evidence" which contradicted the juror's testimony at the hearing.[27] The brother's affidavit stated, in relevant part, that the juror had lied when he testified that he was unaware of his family's connection to the defendants until the connection had been revealed by his brother.

But at the hearing, an investigator also testified that the juror was aware of his family's connection to the defendants at the time that he called his brother. Thus, the evidence contained in the brother's affidavit was cumulative of other evidence presented at the hearing. Consequently, Newman's trial counsel could have made a reasonable strategic decision to refrain from introducing the brother's statements at the hearing. Without a more complete record, we decline to address the issue.

### (b) Jury Instructions
### Nos. 5, 11, and 12

Newman claims that his trial counsel was ineffective in failing to object to jury instructions Nos. 5, 11, and 12, because the instructions omitted key phrases and explanations included in the Nebraska pattern jury instructions.

Instruction No. 5 informed the jury of the elements of the charged offenses. Newman argues that the instruction was erroneous, because it omitted language as to attempted robbery and

---

[27] Brief for appellant at 46.

as to death as a natural and continuous result of the defendant's acts. But there was no need to instruct the jury as to attempted robbery. Based upon the evidence received at trial, the jury could determine either that Newman and Stricklin were the two black males who had committed the robbery and killed Morales and Noriega, or that they were not. There was no issue as to whether the robbery forming the basis for the charged offenses actually occurred.

And there was also no need to instruct the jury as to death as a natural and continuous result of the defendant's acts. There was no dispute that Morales' and Noriega's deaths were caused by the gunshot wounds sustained during the robbery at Morales' shop.

Instruction No. 11 provided the jury with definitions. Newman contends that the instruction was erroneous for omitting the phrase "'or intentional manslaughter,'" as stated in the pattern jury instruction.[28] He does not identify the erroneous definition or the relevant pattern jury instruction, but we presume that he refers to the definition of "'[a] felony.'" Notwithstanding any error in that definition, the jury correctly understood that the offense of attempted intentional manslaughter constituted a felony. The jury found Newman guilty of attempted intentional manslaughter and the corresponding charge of use of a deadly weapon to commit a felony.

As to instruction No. 12, Newman contends that the instruction failed to correctly charge the jury on intent. However, instruction No. 12 was modeled on the relevant pattern jury instruction. As such, the instruction was not erroneous.

None of Newman's allegations of error in the instructions given to the jury caused him prejudice. Thus, the record affirmatively establishes that this claim of ineffective assistance of counsel is without merit.

### (c) Failure to Adequately Investigate Defenses

Newman asserts that his trial counsel was ineffective in failing to interview, depose, and subpoena several witnesses.

---

[28] *Id*. at 47.

And he further identifies the witnesses and the testimony that the witnesses would have given had they been called to testify. However, the record is silent as to whether Newman informed his trial counsel of the witnesses. And there is no evidence as to trial counsel's motivations in failing to interview and subpoena the witnesses or as to any efforts trial counsel made to do so. Consequently, the record is inadequate to resolve the issue.

### 4. Exhibit 288

Newman contends that the district court erred in admitting exhibit 288 into evidence. He claims that the exhibit was more prejudicial than probative and that the court should have given a limiting instruction as to the jury's consideration of the exhibit.

Exhibit 288 showed six calls received by Newman between 11:42 a.m. to 12:36 p.m. on the day of the shootings. And the exhibit further indicated that the cell tower used to service Newman's cell phones for the calls was located in the immediate vicinity of Morales' shop. An "RF engineering manager" and a legal compliance analyst testified as to the calls and confirmed the accuracy of the cell tower's location as shown on the exhibit.

[13,14] Newman has waived any claim that exhibit 288 was unfairly prejudicial. Newman objected to the admission of exhibit 288 on the basis of foundation, and the objection was properly overruled. He did not object on the basis of unfair prejudice. An objection, based on a specific ground and properly overruled, does not preserve a question for appellate review on any other ground.[29] A trial court is required to weigh the danger of unfair prejudice against the probative value of the evidence only when requested to do so at trial.[30]

And there was no need for the district court to provide a limiting instruction as to the jury's use of exhibit 288. Exhibit 288 was received as substantive evidence. No

---

[29] *State v. Duncan*, 265 Neb. 406, 657 N.W.2d 620 (2003).

[30] *Id.*

limiting instruction was required.[31] This assignment of error is without merit.

## 5. Motion for Mistrial

Newman contends that the district court should have granted his motion for mistrial, because the entire jury pool was tainted by comments made by a prospective juror during voir dire.

In response to the State's inquiry as to the prospective juror's opinion of laws that prohibit certain persons from possessing firearms, the juror stated:

> I think all the laws are misconstrued. I think they're a moral fabric in this country. They get broke down so bad. So many people are walking the streets that need to be locked up behind bars and be kept there. . . . It's become a sham. I think a tall tree and a short piece of rope is the way the justice system fights back. I'm sorry I feel that way, but that's just the way it is.

After the prospective juror's response, the State moved to strike the juror for cause. Neither defendant objected, and the juror was stricken. Newman moved for mistrial, claiming that the prospective juror's comments were inflammatory, because the defendants were two African-American males. And he further argued that the comments had polluted the entire jury pool. The district court overruled the motion.

[15] We have stated that a mistrial is generally granted when a fundamental failure prevents a fair trial.[32] Some examples are an egregiously prejudicial statement by counsel, the improper admission of prejudicial evidence, or the introduction of incompetent matters to the jury.[33]

Newman argues that the district court should have granted his motion for mistrial, because a new jury venire was the only remedy that could have cured the prejudice caused by the

---

[31] Cf. *State v. Pangborn*, 286 Neb. 363, 836 N.W.2d 790 (2013).

[32] See *State v. Beeder*, 270 Neb. 799, 707 N.W.2d 790 (2006), *disapproved on other grounds*, *State v. McCulloch*, 274 Neb. 636, 742 N.W.2d 727 (2007).

[33] *Id*.

prospective juror's comments. However, the record affirmatively shows that Newman was not deprived of a fair trial by the juror's comments.

After the prospective juror's comments, the juror was stricken for cause and the defendants were permitted to question other prospective jurors as to their reactions to the comments. The questioned jurors expressed that their opinions had not been influenced by the juror's comments. Thus, we find no abuse of discretion in the district court's refusal to grant a mistrial. This assignment of error is without merit.

### 6. Remaining Assignments of Error

Newman's arguments regarding the exclusion of the statements of the confidential informant, the scope of his cross-examination of Herrera-Gutierrez, his motion for new trial, and his motion to withdraw his rest and to reopen the evidence are addressed in *Stricklin*.[34] As discussed in that opinion, each of these claims is without merit. We see no need to repeat our analysis here.

## VI. CONCLUSION

We find no merit to Newman's assertions that his identification by Herrera-Gutierrez violated his due process rights and that the State introduced insufficient evidence. And the district court did not err in admitting exhibit 288 into evidence, overruling Newman's motion for mistrial, excluding the statements of the confidential informant, limiting the scope of his cross-examination of Herrera-Gutierrez, overruling his motion for new trial, and denying his request to withdraw his rest and to reopen the evidence. Further, his claims of ineffective assistance of trial counsel either lack merit or cannot be resolved, because the record on direct appeal is insufficient. We affirm Newman's convictions and sentences.

Affirmed.

Heavican, C.J., not participating.

---

[34] *Stricklin, supra* note 1.